LIVINGSTON DISBROW, Respondent, *v.* WESTCHESTER HARDWOOD COMPANY, Appellant.

1. DAMAGES — MEASURE OF, FOR CUTTING TIMBER RESULTING IN INJURY TO THE FREEHOLD.   Where the defendant under a contract with the plaintiff was entitled to cut certain timber upon the premises of the latter, and unlawfully cuts other timber, both on land covered and land not covered by the contract, to the injury of the freehold, the measure of damages is the difference between the value of the land after defendant has cut the timber which it was entitled to cut and its value after all the unauthorized cutting.

2. SEPARATE RECOVERY FOR VALUE OF TIMBER CUT, ERRONEOUS. Where the cutting of timber from lands not embraced within the terms of the contract is an injury to the freehold and a recovery is had therefor, an additional recovery for the value of the timber cut cannot be upheld.

*Disbrow* v. *Westchester Hardwood Co.*, 17 App. Div. 610, reversed.

(Argued October 29, 1900; decided November 16, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 22, 1897, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendant from cutting and felling any timber upon plaintiff's lands, and from removing therefrom any of the wood or timber previously cut and felled, except in accordance with the provisions of the contract hereinafter set forth, and to recover damages for the wrongful cutting and destruction of wood and timber not within the terms of said contract.

On the 9th of January, 1895, the plaintiff was the owner of certain lands situated in the town of New Rochelle, Westchester county, N. Y.   The property consisted of two parcels, one of which was known as the Underhill farm and the other as the Disbrow farm homestead, comprising altogether about one hundred eighty-five acres.   These lands contained about forty-six acres of woodland, a part of which is described

as " wood lot on homestead of L. Disbrow ; " another as " wood lot on Underhill Farm ; " a third designated as " pasture and small wood lot not sold ; " and the fourth as " wood lot south of the orchard and immediately west of the southerly portion of the wood lot on the Underhill Farm."

On said 9th day of January, 1895, the plaintiff entered into a contract with the defendant, of which the following is a copy :

" For the consideration of one thousand dollars ($1,000.00), the receipt of which is hereby acknowledged, I hereby sell to the Westchester Hardwood Company all the standing wood measuring more than 6″ diameter at stumps, said wood being located as follows :

" (1) Consideration, $700.00.   Wood in wood lot on Under-hill Farm line, N. S. corner adjoining cross road leading from North St. to Friends Meeting House.

" (2) Consideration, $300.00.   Wood in wood lot on home-stead of L. Disbrow.   I except, however, from above about 25 locust trees measuring more than 6″ diameter.   I further give the Westchester Hardwood Company the right to put up mill and shanties necessary for them to proceed to cut and saw trees, and have said mill and shanties remain there until April 1st, 1896.   The Westchester Hardwood Company agrees to remove above-mentioned mill and shanties upon 30 days' notice being given them by me in writing after April 1st, 1896.   Cut wood and lumber may remain thereafter, if it should be necessary for them to leave it there, on such spots as may not be needed for laying out streets, &c.

" I further agree to permit the Westchester Hardwood Company to cart from wood lot of homestead of L. Disbrow, to wood lot on Underhill Farm across the clear land when crops will not be interfered with, as designated on map. During the crop season the other road is designated on map."

The trial court found that the defendant entered upon said lands within a few days after the date of said contract, and proceeded to cut and fell standing timber, not only upon the

wood lot on the Underhill and Disbrow lots mentioned in said contract, but also upon "pasture and small wood lot" and "the wood lot south of the orchard" which had not been sold by the plaintiff, and upon which the defendant had no right to enter.

It also found that the defendant had cut and felled not only the standing wood, trees and timber over 6″ in diameter at the butt which were upon said wood lots sold to the defendant, and such other and smaller trees of less diameter which were necessarily cut and broken in felling the trees and timber over 6″ in diameter, as contemplated by said contract, but also carelessly and unnecessarily cut and felled a large number of the standing wood and trees of smaller growth than 6″ in diameter upon said wood lots, and in fact cut down all the standing wood and trees that were of value upon said two wood lots, except a fringe of trees near plaintiff's residence, between eighty and ninety of which were over 6″ in diameter, and also excepting twenty-five locust trees on one of the wood lots which were reserved by the contract.

It was further found that the defendant also entered upon the wood lot designated as "pasture and small wood lot not sold" and the "wood lot south of the orchard," and without the authority or permission of the plaintiff cut, felled and removed all the standing trees and timber, with the exception of a few trees of a character and species which were of no value, and has cut and felled virtually all of the wood and timber and standing trees on said wood lots so as to leave the plaintiff's farm bare of wood, thus inflicting serious injury to the plaintiff's whole farm and to the freehold, and depreciating its value.

In its eleventh and twelfth findings of fact the court goes into detail as to the number of trees thus cut, felled and removed, and fixes the value of the mature wood and timber, which had a value apart from the wood lot, at the sum of $224.00.

In its thirteenth finding of fact the court further finds:

53

" That by reason of the defendant's acts in unnecessarily cutting the small standing wood and trees in said lots upon the plaintiff's said farms, and by virtually destroying said wood lots and leaving the plaintiff's farm bare of standing wood and trees, it has depreciated and injured the whole property of the defendant and damaged his freehold to the extent and in the sum of $2,500.00."

As conclusions of law the court finds, among other things : (1) That the plaintiff " is entitled to recover such damages to his freehold as have been occasioned by the cutting, felling and destruction by defendant, or its servants and agents, of all the standing wood and trees 6″ in diameter, or under, at the butt, from the two wood lots specified in the contract and diagram as the ' wood lot on homestead of L. Disbrow ' and ' wood lot on Underhill Farm ' which were wantonly, carelessly or unnecessarily destroyed, cut or broken down in felling the trees over 6″ in diameter mentioned in the contract.

" (2) And plaintiff is also entitled to recover damages to his freehold by reason of the cutting and removal of the standing wood and trees from the two wood lots not designated, as above stated upon said diagram, and which in this action are described as the ' orchard wood lot ' and the ' pasture and small wood lot not sold,' in which said two lots last named defendant was not authorized by said contract or otherwise to cut.

" (3) I further find and decide that the plaintiff is entitled to recover of the defendant the sum of $2,500.00 for the damages and injury to the freehold and whole property by reason of the cutting, felling and destruction of the standing wood and trees which defendant cut and destroyed unnecessarily in all the wood lots upon the whole property, and including all which was cut in the wood lots, where defendant had no right to cut under the contract.

" (4) I further find and decide that in addition thereto, plaintiff is entitled to recover the sum of $224.00, the value of the timber trees cut and felled on the ' pasture and small wood lot not sold,' and in the ' wood lot south of the orchard '

which were cut and felled west of the rail fence in said last-mentioned wood lot."

The other features of the court's findings and conclusions which need to be considered will be referred to in the opinion.

*Edwin Countryman* for appellant. The court erred in adopting as the rule of damages the difference between the value of 185 acres of the land, with the wood cut off of two of the wood lots as per contract, and the value of the land after the defendant had finished felling trees thereon; in other words, the injury to that amount of land caused by the wrongful cutting of the full-grown, as well as the young and growing, trees. (3 Sedg. on Dam. [8th ed.] § 933 ; *Dwight* v. *E., C. & N. R. R. Co.,* 132 N. Y. 199 ; 3 Suth. on Dam. [2d ed.] § 1019 ; *Wallace* v. *Goodall,* 18 N. H. 439 ; *Livingston* v. *R. C. Co.,* L. R. [5 App. Cas.] 25 ; *Jegon* v. *Vivian,* L. R. [6 Ch. App.] 742 ; *Martin* v. *Porter,* 5 M. & W. 351 ; *Wild* v. *Holt,* 9 M. & W. 672 ; *Morgan* v. *Powell,* 3 Ad. & El. [N. S.] 278 ; *W. W. Co.* v. *U. S.,* 106 U. S. 432 ; *Foote* v. *Merrill,* 54 N. H. 490 ; *Beede* v. *Lampney,* 64 N. H. 510.) The rulings of the court on the question of damages were utterly inconsistent with each other and with the general rule of damages adopted by the court, and, as a result of such inconsistency, the defendant was mulcted in a much larger amount than under the rule the plaintiff was entitled to recover. (*Evans* v. *K. G. Co.,* 148 N. Y. 113.) The court erred in holding, as a conclusion of law, that the plaintiff was entitled to judgment restraining the defendant, its agents and servants, from removing any of the timber trees, saw logs or cord wood cut therefrom on the pasture and wood lot not sold, or upon the wood lot south of the pasture, and which was thereon at the time of the commencement of the action. (*Osterhout* v. *Roberts,* 8 Cow. 43 ; *Thurst* v. *West,* 31 N. Y. 210 ; *Marsden* v. *Cornell,* 62 N. Y. 215, 220 ; *Terry* v. *Munger,* 121 N. Y. 161, 165 ; *Fowler* v. *B. S. Bank,* 113 N. Y. 450 ; *Bank of Beloit* v. *Beale,* 34 N. Y. 473 ; *Kennedy* v. *Thorpe,* 51 N. Y. 174 ; *Youmans* v. *Bell,* 151 N. Y. 230.)

*Wilson Brown, Jr.,* for respondent.    The measure of damages when growing timber trees are cut is the difference in the value of the realty before and after the trespass.  (*Harders* v. *Harders,* 26 Barb. 409 ; *Humes* v. *Proctor,* 73 Hun, 265 ; *Edsall* v. *Howell,* 86 Hun, 424 ; *Johnston* v. *Kathan,* 88 Hun, 456 ; 3 Sedg. on Dam. [8th ed.] 45, § 933 ; *Chipman* v. *Hibbard,* 6 Cal. 162 ; *Wallace* v. *Goodall,* 18 N. H. 439 ; *Argotsinger* v. *Vines,* 82 N. Y. 308 ; *Van Deusen* v. *Young,* 29 Barb. 9 ; *Montgomery* v. *Locke,* 72 Cal. 75 ; *Carter* v. *Pitcher,* 68 N. Y. S. R. 661.)    The measure of damages to the property or freehold is the value of the standing trees to the land, and that damage would be created if such trees and wood were felled and left upon the ground for plaintiff's use. (*Longfellow* v. *Quinby,* 33 Me. 457.)

WERNER, J.    The unanimous affirmance below, of the judgment under review, obviates the necessity of examining the facts further than is essential to the proper disposition of the exceptions upon which the appellant relies.

Appellant's first challenge to the validity of this judgment is based upon exceptions taken to the rule of damages laid down by the court.    It is urged that it was error for the court to adopt the rule that the plaintiff was entitled to recover the difference between the value of the land with the wood cut off the two lots, as per contract, and the value of the land after all the cutting, including that which was unauthorized by the contract.    In support of this contention the learned counsel for the appellant cites many cases in other jurisdictions which lay down the rule that, for trespass in cutting full-grown timber, the market value of the wood is the measure of damages. This is undoubtedly the rule which still obtains in this state, and there is nothing to the contrary in *Dwight* v. *E., C. & N. R. R. Co.* (132 N. Y. 199), and the cases there cited.    The reason for the rule that the value of the wood is the measure of damages in the wrongful cutting of mature timber, is that usually, in such cases, no injury is done to the land.    When there is no such injury the value of the wood is the accurate

and complete measurer of compensation. But this rule like all others has its exceptions. One need not wander very far outside of the record before us for an illustration of injury to a freehold in denuding it of timber, whether it be young or mature, or both. In such a case the boasted efficacy of the law to right every wrong would fall far short of its promise if the injured owner of the freehold were limited to a recovery of the naked value of the wood. It is this distinction between a case where the complaining owner may, or must be, satisfied with the mere value of the wood taken, and one where the loss of the wood taken is merely incidental to the greater injury done to the freehold, that is emphasized by the decision in *Dwight* v. *E., C. & N. R. R. Co. (supra)*.

In the cases before us the application of this distinction is made obvious by the terms of the contract. All trees upwards of six inches in diameter, except a few which were specifically reserved, were treated as mature and fit for cutting; while all below those dimensions were regarded as growing timber not to be interfered with further than was necessary in the felling of the mature trees. Without further elaboration of the theory upon which the distinction above adverted to is founded, we conclude that if the learned trial court had consistently applied and adhered to the rule of damages challenged by the appellant it would not be disturbed by this court.

This leads us to the consideration of appellant's next contention, which is that this rule, although once adopted, was not adhered to throughout the inquiry upon the subject of damages. The exceptions taken under this head raise one of the serious questions in the case. The first witness who testified upon the subject of damages was the plaintiff himself. Under proper objections and exceptions he was interrogated as to the value of his property before the execution of the contract of January 9, 1895, with the defendant, and then as to its value after all the cutting of timber. This inquiry was pursued with variations in the form of the questions until the court announced that "all the rulings and proceedings in

respect to the measure of damages in this action" are stricken out. Thereupon the plaintiff was recalled and the following questions were put to him : " What was the value of your property with the trees cut off over 6" in diameter at the butt, and with such smaller trees cut and destroyed, also as were necessarily felled or destroyed in cutting and felling those over 6" in diameter at the butt, upon those two wood lots which were sold under the contract ?" After answering this question the plaintiff was asked : " What was the value of your property when the defendant finished felling trees thereon ?" These same questions, with slight changes, were put to the same witness at different points in his examination. These latter questions, as will be observed, were in exact accordance with the rule of damages above referred to as applicable to the facts of this case. Since the defendant had the right by virtue of its contract to cut a certain portion of plaintiff's timber, the proper inquiry was : *First,* the value of the land after taking off and destroying the timber which the defendant was entitled to take and destroy, and, *second,* the value of the lands after all the cutting, both lawful and wrongful. But this adherence to the correct rule was of short duration and, when one Archer was called as a witness for the plaintiff, he was permitted, under objection and exception, to testify to the difference between the value of the land on January 1, 1895, and after the cutting. The same course was pursued in the examination of the witness Bard for the plaintiff. The vice of this method of examination is apparent in the fact that it utterly ignored the right of the defendant to cut the timber specified in his contract. As we have said, the inquiry should have been as to the difference in the value of the land after defendant had cut and felled the timber it was entitled to cut and fell under the contract, and then the value of the land after all the unauthorized cutting. This was a matter, not merely of form, but of real substance. It may be, as urged by respondent's counsel, that the court arrived at a just and accurate measure of damages. We cannot say,

however, that it was not influenced by the failure to eliminate from the inquiry that portion of the injury to the freehold which was authorized by the contract. It is suggested that, probably, the court deducted the contract price from the damages proven; but this is obviously answered by the reflection that the contract price and the value of the contract may be entirely different things. It was not the contract price that was to be considered, but the value of the timber taken under the contract. No allowance was made for this essential factor in the inquiry, and this we think was substantial error.

Again, it said that the court erred in applying two separate rules of damages by awarding to the plaintiff the damages to his freehold, and also the value of the mature wood and timber cut and taken from the lands not embraced in the contract. We can see no objection to the application of both rules in cases where the evidence clearly differentiates the facts which make the basis of each rule. If, for instance, it had been clearly shown that the cutting of the mature timber not within the terms of the contract was not an injury to the freehold, and had not been considered as a part of the general denudation of the woodland, there would be no difficulty in awarding for this item of loss its exact equivalent in damages, which would be the value of the wood and timber. It would be equally practicable to award damages for any injury to the freehold which is definitely shown to have no relation to the mere cutting and taking of mature wood and timber. It is not apparent, however, that this distinction was observed in the admeasurement of damages. On the contrary, the context of the court's decision seems to justify the argument that the plaintiff has recovered for the loss of his mature wood and timber not embraced in the contract, in addition to the damages for injury to the freehold. In this condition of the record the judgment cannot be upheld.

There is another phase of this question of damages, so far as it relates to the cord wood, sawed logs and mature timber not within the contract, which bears upon the scope of

the injunction to which the plaintiff claims to be entitled. In its fifth conclusion of law the court finds, among other things, that the plaintiff is entitled to judgment restraining the defendant from removing any of the timber trees, sawed logs or cord wood cut therefrom upon the two lots not specified in the contract. This conclusion was duly excepted to by the defendant. It must be assumed, we think, that this conclusion refers to the mature timber, sawed logs and cord wood, for the cutting of which the plaintiff was awarded the sum of $224 damages. It goes without saying that the plaintiff could not recover for the value of the wood wrongfully taken and still retain title thereto so as to entitle him to prevent its removal by the defendant. By electing to sue and recover for its value the plaintiff must be held to have waived the tort, and he must rely upon the contract of sale which, in such a case, the law implies. (*Terry* v. *Munger*, 121 N. Y. 161.) That part of the judgment which restrained the defendant from removing the wood, the value of which the plaintiff had elected to recover, was, therefore, inconsistent with the relief already granted.

We have reviewed this case at greater length than is usual when a single exception is sufficient to require a reversal of the judgment in the hope that upon another trial the plaintiff may avoid the errors which have rendered the first one fruitless of substantial results.

The judgment of the court below should be reversed and a new trial granted, with costs to abide the event.

Parker, Ch. J., Gray, O'Brien, Haight and Landon, JJ., concur; Cullen, J., not sitting.

Judgment reversed, etc.