CHARLES J. MACORD et al., Plaintiffs, *v.* THE CITY OF NEW ROCHELLE et al., Defendants.

Supreme Court, Westchester County, December 7, 1942.

*George Beisheim, Jr.,* for plaintiffs.

*Aaron Simmons, Corporation Counsel (Murray Fuerst* of counsel), for defendants.

J. ADDISON YOUNG, Official Referee. The plaintiffs in this action are the owners of certain property situate on Webster avenue in the city of New Rochelle, on which they have resided for a good many years. Prior to the time they purchased their property, it was part of a larger plot of land owned by one Ada Gossman. On July 17, 1890, she executed a written instrument granting to the Commissioners of Sewers and Drainage of the village of New Rochelle and the village of New Rochelle an easement in and right-of-way over the property therein described for the purpose of constructing, repairing, altering and maintaining a sewer and, shortly after this easement was granted, a sewer pipe was laid in the property described in the easement. This sewer pipe was either eight- or ten-inch cast-iron pipe. So far as the record shows, this pipe was used as a part of the sewer system of the village of New Rochelle and later of the city of New Rochelle. Apparently, it never became necessary to replace this pipe or to go upon the property for such purpose. In 1937, the city of New Rochelle contemplated the construction of a drain to take care of the surface water which accumulated near plaintiffs' property in time of rains. On September 4, 1937, the Corporation Counsel, by his assistant, wrote a letter to the plaintiffs, which is in evidence as follows:

" September 4th, 1937.

Charles J. and Margaret F. McCord
18 Webster Ave.,
New Rochelle, N. Y.

Re: Block 483—Lot 60.

Dear Sir and Madam:—

The City of New Rochelle is prepared to lay a drain which will run through your property, the purpose of which will be

to alleviate the flood conditions now prevalent in the Webster Avenue and Beechwood sections. This drain which is known as the Burling Brook drain will be of great benefit to all of the property owners in your neighborhood.

At the present time, the City of New Rochelle holds a sewer easement running through your property and in building the drain the City does not expect to use any more property than that which is now occupied by the sewer. The building of this drain will therefore not necessitate your giving up any additional rights to the City than have already been given up by former owners.

Before the drain can be built, it will be necessary for you to extend the sewer easement so that it will include the drain and we would appreciate your stepping in to this office at your earliest convenience in order to sign the necessary papers.

Very truly yours<br>(Signed) MURRAY C. FUERST.''

Not hearing from the plaintiffs, several other letters were written to them by Mr. Fuerst, the special assistant to the Corporation Counsel. Finally, on January 24, 1938, the following letter was written by the attorneys for plaintiffs:

'' January 24, 1938.

City of New Rochelle,
Department of Law,
New Rochelle, New York.

Attention: Murray C. Fuerst, Esq.,<br>Re: Burling Brook Drain, Block 483, Lot 60,<br>Charles J. Macord

Dear Sir:

We regret very much that we did not acknowledge your letter of December 20th, 1937, before this late date.

Mr. Macord objects strenuously to the construction of any drain through his premises and has instructed us to inform you that he will avail himself of every legal means to prevent this proposed invasion of his property.

We believe that Mr. Macord informed you that it is his intention some day to construct an apartment house upon the above-described premises and he believes that the construction of this drain will seriously interfere with, if not prevent, the completion of his plans.

We are informed that originally the City planned to lay this drain in the path of the present sewer which is beneath the driveway of the Hoffman premises adjoining those of Mr. Macord. At the moment, of our own knowledge, we do not know whether or

not this is the fact, but regardless of that, it would seem that no permanent damage would be effected if the course of the Burling Brook Drain should be where the present sewer is, and we suggest that it will be more satisfactory all around if this be done.

Very truly yours,

KENT, HAZZARD AND JAEGER,

By GEORGE BEISHEIM, JR.''

In spite of this letter, however, in May, 1938, the city began operations on plaintiffs' property for the construction and laying of the water drain. A steam shovel was used to excavate on the land covered by the easement aforesaid and the work of excavation was finished in August, but the work was not finally completed until May, 1939. The drainpipe was five feet in diameter, and the work involved in laying it in the ground was extensive and necessarily resulted in throwing large quantities of earth upon the right-of-way and the destruction of a number of trees and shrubs growing upon the same. The city contends that, inasmuch as it did, in the course of this work, install a new sewer pipe, the work done was authorized by the terms of the easement referred to, and that no trespass on its part was involved.

The plaintiffs, on the other hand, insist that the city did not enter upon plaintiffs' property for the purpose of repairing or maintaining the sewer pipe; that the work done was for the purpose of installing the new drain as stated in its letter to the plaintiffs, dated September 4, 1937. In my opinion, the plaintiffs are right in their contention. I think the easement gave the city no right to enter on plaintiffs' property for the purpose of installing the drainpipe, and that, in so doing, it must be regarded as a trespasser. It is plain that the easement was secured for the purpose of installing a sewer pipe as part of the sewer system then being constructed for the village. The language of the easement in this respect is very plain and, of course, there was no thought at that time of installing a pipe for surface-water drainage.

In this view, the defendant city must be held liable for the damage sustained by the plaintiffs by reason of the trespass of the city. The evidence on this subject offered by the plaintiffs is twofold. In the first place, a real estate expert, Mr. Kull, testified that the plaintiffs' property, prior to the trespass, had a fair market value of $15,390 and that, after the work was completed by the city, it had a value of $14,647.20, resulting in a damage of $742.80. This represents the difference in the value of plaintiffs' property as it existed with the burden of the orig-

inal right-of-way for the sewer and the value of the property after the additional burden was imposed upon the property by the laying of the drain.

It was stated by the witness Kull very distinctly that this estimate given by him did not include any of the damage suffered by the plaintiffs by reason of the cutting down and destruction of the trees and shrubs. On this subject, another witness estimated that the trees and shrubs thus destroyed were of the value of $1,002, while a witness called by the defendant city estimated the damage in this respect to be not more than $200. There may be a question as to whether the plaintiffs can be allowed any damage beyond the amount granted for the injury to the freehold, but, inasmuch as Mr. Kull's estimate of this damage expressly eliminated all loss to the plaintiffs by reason of the destruction of the trees, it seems to me that a fair amount should be allowed in this respect. (*Disbrow* v. *Westchester Hardwood Co.*, 164 N. Y. 415.) On this basis, I allow the plaintiffs $500 damages as injury to the freehold by reason of the additional burden placed upon the property by the installation of the water drain, and $500 as representing their loss by the destruction of the trees and shrubs.

The remaining question is as to whether the plaintiffs are entitled to a judgment for treble damages. It seems to me that there can be no question that the trespass was wilful and deliberate. The city plainly believed that it had no right to enter this property by virtue of the original easement. This is shown by its letter to the plaintiffs of September 4, 1937. The attitude of the plaintiffs was plainly expressed by the attorney's letter to the city, dated January 24, 1938. The city, with its full knowledge of the situation, elected to take a chance and to go ahead, and it must suffer the consequences. (*New York Institute for Education of Blind* v. *Colonial Sand & Stone Co., Inc.*, 264 App. Div. 339.) Settle decision on notice, at which time I will pass on any requests to find that the defendant city may care to present.