There was evidence offered showing:
That Joseph Steadman died in Rutherford County in 1857, leaving a last will and testament, signed Joseph (X) Steadman, and witnessed by two subscribing witnesses.
That Joseph Steadman left six children and heirs at law: Susannah and James A. Steadman, John, Sarah, Margaret, and Mary Steadman.
That all the devisees mentioned in the will were dead at the time of the action brought; John, Sarah, Mary, and Margaret having died without issue.
At the death of Margaret, she left a last will and testament devising her property to her sister Mary, who died not long before the institution of this suit.
The tract of land, the subject of this controversy, is the second or 150-acre tract mentioned in the will of Joseph Steadman, and the language of the will pertinent to the questions involved as follows:
"It is my will that my eldest daughter, Susannah, and my son (347) James A., shall have a certain tract of land containing one hundred acres lying on the waters of Dill's Creek, to be equally divided in value between them, and then also one other tract containing one hundred and fifty acres, lying on the waters of Jarrett's Creek. It is my will that my son John and daughters Mary and Margaret be equal sharers in said tract of land during their natural life. It is my will that my daughter Sarah shall have equal in value with my son John and daughters Mary and Margaret, to be paid out of the other portion of my estate, due allowances to be made by my daughter Susannah and son James A. and daughter Sarah for property already received. And all other property (except the mare which I now own) to be equally divided between my son John and daughters Mary and Margaret."
The plaintiffs, who claim the land under this will, are the children and heirs at law of Susannah and James A., two of the devisees named in the will.
The defendants claim under a deed from Mary, one of the devisees named in the will.
Issues were submitted that were responded to by the jury as follows:
1. Did John Steadman, Margaret Steadman and Mary Steadman claim title to the land described in the complaint under Joseph Steadman? Answer: Yes.
2. Are the plaintiffs the owners in fee and entitled to the possession of the land described in the complaint? Answer: Yes; eleven-fifteenths. *Page 275 
3. Is the defendant in the unlawful and wrongful possession thereof? Answer: Yes.
4. What damages, if any, have plaintiffs sustained by reason of defendant's wrongful and unlawful possession? Answer: Fifteen dollars for each year; total, $30.
On the verdict, the Court gave judgment in favor of plaintiffs for eleven-fifteenths of the land in controversy. (348)
Both plaintiffs and defendants excepted and appealed.
DEFENDANTS' APPEAL.
The jury, by their verdict, having established that both plaintiffs and defendants claim the land in controversy under Joseph Steadman, the alleged testator, the defendants are, for the purposes of this action, estopped from questioning the title of the common grantor; and can, in any event, only claim the estate that may have come to them by reason of the deed from Mary Steadman, the devisee, or one of the heirs at law of her father, the said Joseph.
Defendants object to the validity of this trial, and assign for error:
1. That the Court admitted in evidence the paper-writing purporting to be the last will and testament of Joseph Steadman. This paper-writing bearing date 28 November, 1857, signed by Joseph (X) Steadman and attested by two witnesses, Joseph Owens and Drewry McDaniel, when offered as evidence, had thereon two probates, one bearing date December, 1857, in which it is shown that "Drewry McDaniel, one of the subscribing witnesses, upon being duly qualified, proved the due and solemn execution of the will; and the second, bearing date 12 April, 1906, set out in extenso in the record, and in all things complying with the requirements of Revisal 1905, sec. 3127, clause 3, which provides as follows:
"In all cases where the testator executed the will by making his mark, and where any one or more of the subscribing witnesses are dead or reside out of the State, or are insane or otherwise incompetent to testify, it shall not be necessary to prove the handwriting of (349) the testator, but proof of the handwriting of the subscribing witness or witnesses so dead, absent, insane or incompetent shall be sufficient."
The first probate was invalid, because at the time it was taken proof by one of the subscribing witnesses, without more, was not sufficient proof of a will. This was all that had been required under the Revised *Page 276 
Statutes for proof of a will in common form in the first instance; Revised Statutes, ch. 122, sec. 6; but the Revised Code, which went into effect on 1 January, 1856, required that a written will with witnesses should be proved by the oath of two of the subscribing witnesses, if living, etc. Revised Code, ch. 119, sec. 15.
At the time the will was proven, The Code had probably not been universally distributed; or, what is more likely, the Courts of Pleas and Quarter Sessions had not become familiar with the changed method.
Whatever may have been the reason, the first probate did not comply with the law as it then existed; and, standing alone, would not justify the admission of the will in evidence.
The plaintiff, recognizing that this probate was not in compliance with the statute, then offered proof establishing the second probate, which in all things complied with the requirements of the law, showing that one of the subscribing witnesses was dead and the other had for many years been a nonresident.
It is objected to this proof that the same is too late, and cannot now be received; but the authorities do not support this position.
In the absence of some statute to the contrary, there is no limit upon the time after a testator's death within which a will may be proven. Gardner on Wills, p. 314.
In Haddock v. R. R., 146 Mass. 155, a will was admitted to probate sixty-three years after the death of the testator.
And while the will does not operate to pass property till (350) proven, as required by law, when it is so proven it relates back to the death of the testator so as to vest title from that date as between the parties who claim under it. Underhill on Wills, 21, note 3; citing Graves v. Mitchell, 90 Wis. 316; Coggeshall v. Home,18 R. I., 696. See, also, Scott v. West, 63 Wis. 529.
Nor does the attempt to prove the will in accordance with the law as it formerly existed affect the present probate, which, in all things, complies with the present law. Morgan v. Bass, 25 N.C. 243.
Nor, in any event, could the probate be questioned by one who claims under the will by this indirect method. London v. R. R., 88 N.C. 585;Hampton v. Hardin, 88 N.C. 592.
The probate of this will being valid, and the same having been duly recorded, the will was properly admitted as evidence.
Defendant further objects that the Court admitted in evidence the declarations of Mary Steadman while in possession of the property, to the effect that she held under the will of her father, Joseph.
These declarations are competent as characterizing and accompanying the possession of the declarant, and were also properly received. Nelson v.Whitfield, 82 N.C. 46; Bivins v. Gosnell, 141 N.C. 341. *Page 277 
There is no reversible error to defendants' prejudice shown in the record, and on their appeal the judgment is affirmed.
No Error.
PLAINTIFFS' APPEAL.