## Staunton.

## HONAKER LUMBER COMPANY, INC., v. GEORGE W. KISER.

September 21, 1922..

Absent, Kelly, P.

1. TRESPASS—*Trees and Timber—Venue.*—Of an action for cutting and removing timber and committing other trespasses upon the land of plaintiff, the circuit court of the county in which the land is located has jurisdiction.

2. TREES AND TIMBER—*Trespass—Evidence—Public Lands—Testimony as to what Plaintiff's Lawyer did and the Fees Paid Him with Reference to a Court Right.*—In an action for cutting and removing timber and committing other trespasses upon his land, plaintiff had a right to prove any facts or circumstances which would tend to sustain his contention that a court right to the land had been granted to his grantor, where defendant was denying the existence of the court right. Accordingly, it was no error for the trial court to permit plaintiff's grantor to testify as to what his lawyer did and the fees he paid him with reference to the court right.

3. RECEIPTS—*Effect of Receipt—Payment—Parol Evidence.*—A receipt for the payment of money is an admission that the money has been paid, but only *prima facie* proof thereof, and may be rebutted by parol testimony; likewise the fact of the payment may be proven by parol.

4. TREES AND TIMBER—*Trespass—Deed as Evidence—Equitable Title Sufficient to Sustain Action.*—In an action for cutting and removing timber and committing other trespasses upon land, the land in question was conveyed to plaintiff's grantor by one R. and his wife. In order to save recordation fees, plaintiff's grantor surrendered his deed to R. and his wife for cancellation, with the request that they make a deed conveying the land to plaintiff, which they did. Subsequently plaintiff's grantor conveyed his interest in the land to R.

   *Held:* That, without the execution of this last deed, plaintiff was the owner of the equitable title, and could have maintained this action, and that therefore defendant was not prejudiced by the introduction in evidence of the deed.

5.  TREES AND TIMBER—*Trespass—Cutting and Removing Trees—Measure of Damages—Case at Bar.*—In the instant case, an action for cutting and removing timber and committing other trespasses upon the land of plaintiff, it appeared from the evidence that the defendant not only cut and removed the merchantable timber from the land, but broke down the fences, damaged the undergrowth, tore up the soil, and practically cleared the land of brush and everything growing thereon. No market value was shown for the property taken *and the property injured,* and the most accurate way to measure the damages sustained by the plaintiff was to ascertain the value of the land immediately before the defendant began to cut the timber and immediately after it completed the cutting of the same.

6.  TRESPASS—*Measure of Damages—Destruction of Property Upon Land.*— When a thing, whether it be a building, a tree, or shrub, is destroyed by a wrongdoer, the most natural and best measure of the damage is the value of the thing destroyed as an appurtenant to, or part of, the realty; and ordinarily the value of the thing destroyed would be the measure of the injury to the freeholder, and the amount of the depreciation in the value of the realty, on account of the destruction of and injury to the property appurtenant thereto, would, when the property destroyed or injured has no affectionate value, represent the value of the property destroyed.

7.  DECLARATIONS AND ADMISSIONS—*Declarations of One in Possession of Land—Purpose for Which Declarations are Admissible.*—In the case of real estate, declarations by one in possession of land are competent to show that his user or possession was adverse to the title of another, to determine the extent of his possession, to indicate the source of the title relied on, so far as that fact may have legitimate incidental bearing on the good faith and nature of the claim, or its extent, and to show the intent with which the declarant made an entry on land, and it is no ground for rejecting the declaration that it is self-serving.

8.  DECLARATIONS AND ADMISSIONS—*Possession of Real Property—Res Gestae.*—Whenever the fact of possession is relevant to the issues, the declarations accompanying and characterizing the possession are competent as part of the *res gestae* of the acts of possession.

9.  WITNESSES—*Corroboration—Previous Declaration of Witness.*—Where a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such an account could be foreseen or motives of interest would have induced a different statement, is admissible.

10.  APPEAL AND ERROR—*Record—Objection to Testimony—Answer Expected.* —An exception to the rejection of testimony will not be considered

on appeal where the record fails to disclose what answer the witness was expected to make.

11. PUBLIC LANDS—*Court Right—Destruction of Records by Fire—Court Right as Color of Title.*—In an action for cutting and removing timber and committing other trespasses upon the land of plaintiff, it appeared that plaintiff's predecessor in title secured a court right to the land in question, as provided by section 457 of the Code of 1919; that the records in the clerk's office of the county where the court right was obtained had been destroyed by fire. Under these circumstances plaintiff was not required to show upon what evidence the court right was granted, or the contents of the court order granting the same, the presumption being that the court would not have granted it except upon proper proof, and that the order entered was in the form required by law. This court right gave the plaintiff's predecessor a color of title for all the land included in his survey.

12. ADVERSE POSSESSION—*Color of Title—Extent of Possession.*—In Virginia, when a person having a colorable title enters upon a vacant possession, claiming title to the whole tract, his possession is coextensive with his boundaries.

13. APPEAL AND ERROR—*Conflict in Evidence—Conclusiveness of Finding of Jury.*—Where the evidence is in conflict, the weight and credibility of the testimony are questions for the jury, and their findings are conclusive as to the facts.

14. ADVERSE POSSESSION—*Color of Title—Court Right—Evidence Sufficient to Establish Title by Adverse Possession.*—Where it appeared that plaintiff's predecessor in title, under his court right, had actual, continuous, exclusive, open, and notorious possession of the land in question, under a *bona fide* claim of title against the title of all other persons, for more than ten years, the period of the statutory bar, he has a good title by adverse possession.

15. COUNTIES—*Act Establishing Boundaries of Counties—Mistake of Surveyor in Running Line.*—An act of Assembly creating a county provided in terms that a certain farm should be included in the new county, and the report of the surveyors who established the county lines showed that they included this farm in the new county. It was contended, however, that the line of the actual survey made by the surveyors left the farm in the old county.

*Held:* That the surveyors had neither the authority nor the power to make the farm a part of the old county, and that their act in so running the line as to place it in the old county was a nullity.

16. RECORDING ACTS—*Recording in Wrong County—Purchaser Without Notice.*—Where a deed of a farm was never recorded in the county in which it was situated, a subsequent purchaser having no notice or knowledge of the prior deed is a purchaser for value and without notice, and acquires the legal title to the farm.

17. APPEAL AND ERROR—*Instructions*—*Error in Instructions where no Other Verdict Could be Rendered.*—Where, under the evidence, the jury could not have rendered a verdict for defendant, it cannot be said that defendant was prejudiced by the granting or refusing of instructions.

Error to a judgment of the Circuit Court of Wise county, in an action of trespass.    Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. H. Rouse* and *John W. Flannagan, Jr.*, for the plaintiff in error.

*S. H. & Geo. C. Sutherland*, for the defendant in error.

WEST J., delivered the opinion of the court.

George W. Kiser recovered a judgment for $1,000.00, with interest and costs, against Honaker Lumber Company, Inc., for cutting and removing timber and committing other trespasses upon his land.    Honaker Lumber Company is here assigning error to that judgment.

For convenience the parties will be designated as plaintiff and defendant, with respect to their positions in the lower court.

Some time prior to the civil war James Rasnick (sometimes spelled Rasnake) had a survey made of a tract of waste and unappropriated land, then in Buchanan county, containing 215 acres.    He had the boundary lines marked, and entered at once upon it, and has lived there ever since, always paying taxes on it and claiming it to the extent of his survey, and farm-

ing the land for a living.    He built on it two dwelling houses, a smokehouse, barns and other outbuildings and began fencing it before the civil war, and later one of his fences included the land now in controversy.

After paying taxes on it for about sixteen years, in 1870 or 1871, he went before the court in Buchanan county and obtained a court right, as provided by section 457 of the Code, for the entire tract surveyed, containing 215 acres.    His ownership of this land was so notorious that the legislature of Virginia, in 1880 (Laws 1879-80, c. 140), in the act creating Dickenson county, expressly provided that the county line should run, "thence with the Russell county line to James Rasnick's farm, including said farm in the new county."

The 215 acre tract was claimed by one Warder, under a claim for a large boundary, but he recognized Rasnick's title to the land and offered to buy it several times.    Finally, Thomas W. Davis, agent for Warder, offered to convey the Warder title to the land to Rasnick, if Rasnick would sell the coal and mineral under and upon said land to the Virginia Coal and Coke Company, and said Davis, agent for George A. Warder, by deed dated March 10, 1888, and recorded in Dickenson county January 12, 1889, conveyed the Warder title to the surface of said 215 acre tract to said James Rasnick.

On December 8, 1887, Thomas W. Davis, agent for George A. Warder, conveyed to Virginia, Tennessee and Carolina Steel and Iron Company a tract of land described as lying in Buchanan county, containing seventy-two acres, more or less, which included the land conveyed by James Rasnick and wife to Geo. W. Kiser, as a tract of forty-four and one-half acres.    The said deed of December 8, 1887, was recorded in Buchanan county on January 30, 1888, but never recorded in

Dickenson county. It was under this deed that the defendant claimed and cut the timber in 1914. James Rasnick had no notice or knowledge of the deed last mentioned until 1908.

Oliver Rasnick, son of James Rasnick, upon his father's promise to give him the land, cleared up and fenced in a portion of the land now in controversy, and grew cabbage, corn and potatoes on it. James Rasnick afterwards sold to Everett Rasnick a portion of the 215 acre tract, including the land which was cultivated by Oliver Rasnick, he having surrendered the land to his father. Later Everett Rasnick sold this land to the plaintiff, George W. Kiser.

Everett Rasnick having failed to have his deed for the land recorded, to save the extra recordation fees, turned his deed back to James Rasnick for cancellation, with the understanding that James Rasnick and wife would convey the land direct to Kiser. This they did by deed dated September 23, 1897, conveying the land as a tract of land in Dickenson county, containing forty-four and one-half acres, more or less, excepting from the operation of the deed the coal and mineral under and upon said land. This tract, by actual survey, contains only thirty-five and five-tenths acres. Later, February 18, 1918, Everett Rasnick conveyed his interest in this land to James Rasnick.

James Rasnick sold the poplar trees measuring not less than twenty inches in diameter at the stump from the 215 acre tract, including the seventy-two acres, to Douglass Lumber Company prior to the time he made the deed to Kiser, and the company removed the timber without objection from anyone.

In May, 1914, the defendant entered upon the forty-four and one-half acre tract of land and cut and removed the timber twelve inches and more in diameter,

cut timber across plaintiff's fences and destroyed his pasture, built roads and tram roads, damaged the small timber and undergrowth, and tore up the soil.

The foregoing are among the material facts appearing in the evidence.

The plaintiff relies for title on the Warder title, the court right, and adverse possession. While the defendant denies plaintiff's title and claims it holds the title to the land.

The defendant urges eleven assignments of error.

The first three relate to the action of the court in granting and refusing instructions, and will be considered later.

[1] The fourth assignment is to the action of the court in refusing the motion of defendant to dismiss the suit, because the Circuit Court of Dickenson county had no jurisdiction of the cause of action, which, it is contended, originated in Buchanan county.

This suit was originally instituted in the Circuit Court of Dickenson county, and by consent of parties transferred to the Circuit Court of Tazewell county. Later, on account of the congested condition of the docket, the case was removed to the Circuit Court of Wise county, where it was tried.

It appears from the record that the land, from which the timber in controversy was cut, is located in Dickenson county. It follows, therefore, that the circuit court of that county had jurisdiction of the case, and the defendant's motion to dismiss was properly overruled.

[2] The fifth and sixth assignments are to the action of the court in permitting James Rasnick to testify as to what his lawyer did and the fees he paid him with reference to the court right, and in permitting him to testify as to the tax tickets and the payment of taxes.

The defendant was denying the existence of the court right, and plaintiff had the right to prove any fact or circumstance which would tend to sustain his contention that it had been granted to him by the Buchanan court.

[3] A receipt for the payment of money is an admission that the money has been paid, but only *prima facie* proof thereof, and may be rebutted by parol testimony; likewise the fact of the payment may be proven by parol.    These assignments are also without merit.

[4] The seventh assignment complains that the court erred in permitting the deed from Everett Rasnick to James Rasnick, dated February 18, 1918, to be received in evidence.    The land conveyed by this deed was conveyed to Everett Rasnick by deed from James Rasnick and wife.    Later, Everett sold the land to the plaintiff, and, in order to save recordation fees, Everett surrendered his deed to James for cancellation, with the request that he make a deed conveying the land to the plaintiff.    Without the execution of the deed complained of the plaintiff was the owner of the equitable title and could have maintained this action.    Under these circumstances, the defendant was not prejudiced by the introduction in evidence of the deed of February 18, 1918.

The eighth assignment alleges that the court erred in permitting the witnesses, Joe Rasnick, Harman Kiser and George W. Kiser, to testify as to the value of the land before and after the timber was taken off, for the purpose of fixing the value of the timber taken.    In this contention we cannot concur.

[5] It appears from the evidence that the defendant not only cut and removed the merchantable timber from the land, but broke down the fences, damaged the undergrowth, tore up the soil, and practically cleared the

land of brush and everything growing thereon. No
market value was shown for the property taken *and the
property injured*, and the most accurate way to measure
the damages sustained by the plaintiff was to ascertain
the value of the land immediately before the defendant
began to cut the timber and immediately after it com-
pleted the cutting of the same.

In *C. & O. Ry. Co.* v. *Baylor*, 118 Va. 43, 86 S. E. 847,
in which damages were claimed only for injury to stand-
ing timber, the court approved the following instruc-
tion: "The court instructs the jury that if they find for
the plaintiff, then they shall assess his damages at an
amount equal to the difference between the market
value of the timber immediately before the fire and its
market value immediately after the fire." And in *Jef-
fress* v. *Va. Ry. & Power Co.*, 127 Va. 732, 104 S. E. 405,
this court stated the law thus: "If the plaintiff is en-
titled to recover at all, his compensation should be the
money value of the property destroyed and the money
loss for the property injured, fixed as of the time of the
fire."

[6] When a thing, whether it be a building, a tree, or
shrub, is destroyed by a wrongdoer, the most natural
and best measure of the damage is the value of the thing
destroyed as an appurtenant to, or part of, the realty;
and ordinarily the value of the thing destroyed would be
the measure of the injury to the freeholder. *Disbrow* v.
*Westchester Hardwood Co.*, 164 N. Y. 415, 58 N. E. 519.

It is likewise true that the amount of the depreciation
in the value of the realty, on account of the destruction
of and injury to the property appurtenant thereto,
would, where the property destroyed or injured has no
affectionate value, represent the value of the property
destroyed.

The ninth assignment asserts that the court erred in

admitting the testimony of William Rasnake, a cousin of James Rasnick, about a conversation he had with James Rasnick, a witness present and testifying, as to the court right.

The statement complained of is, substantially, that James Rasnick, while living on the land which he had surveyed, said to William, "I own and claim this land as my own because the court made me a title to it. Here is my title and it extends as follows," and then read to him a paper which calls for the objects which William knows are the boundaries of the survey.    It is immaterial that James read it instead of William.

[7] In the case of real estate, declarations by one in possession of land are competent to show that his user or possession was adverse to the title of another, to determine the extent of his possession, to indicate the source of the title relied on, so far as that fact may have legitimate incidental bearing on the good faith and nature of the claims, or its extent; to show the intent with which the declarant made an entry on land—it is not ground for rejecting the declaration, that it is self-serving.    22 C. J. p. 274.    The following cases are also instructive: *Clary* v. *Hatton,* 152 N. C. 107, 67 S. E. 258; *Hill* v. *Bean,* 150 N. C. 436, 64 S. E. 212; *Steadman* v. *Steadman,* 143 N. C. 345, 55 S. E. 784.

Declarations of a person in possession of land are primary evidence of the extent of his claim.    22 C. J. p. 275.

[8] Whenever the fact of possession is relevant to the issues, the declarations accompanying and characterizing the same are competent as part of the *res gestae* of the acts of possession.    11 Ency. Ev. 388.

It is intimated by the defendant's attorney that the claim of James Rasnick under the court right was unheard of before this case arose.

In *Repass* v. *Richmond*, 99 Va. 508, 39 S. E. 160, the court stated the law thus: "Where a design to misrepresent is charged upon the witness in consequence of his relation to the party or the case, it may be shown that he made a similar statement before the relation existed."

[9] Where a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such an account could be foreseen or motives of interest would have induced a different statement, is admissible.    40 Cyc. 2798.

This assignment is clearly without merit.

[10] The tenth assignment relates to the court's action in not allowing the defendant's witness, J. B. Kennedy, to testify as to a conversation he had with James Rasnick some years ago about this title, in which Rasnick gave no intimation of his claim under a court right, or other source than the Warder title.    The record failing to disclose what answer the witness was expected to make, we decline to consider this exception.    *Douglas Land Co.* v. *Thayer*, 107 Va. 292, 58 S. E. 1101.

The eleventh assignment alleges that the court erred in refusing to set aside the verdict of the jury on the ground that it is contrary to the law and the evidence and because the verdict is excessive.

[11] It is admitted that all the records in the clerk's office of Buchanan county were destroyed by fire in 1881 or 1882. . But it plainly appears from the evidence that James Rasnick, in 1871 or 1872, secured from the court in that county a court right for the 215 acre tract of land, as provided by section 457 of the Code.    The plaintiff was not required to show upon what evidence the court right was granted, or the contents of the court order granting the same, the presumption being that the

court would not have granted it except upon proper proof, and that the order entered was in the form required by law.    This court right gave Rasnick a color of title for all the land included in his survey.

[12] In Virginia, when a person having a colorable title enters upon a vacant possession, claiming title to the whole tract, his possession is co-extensive with his boundaries.    *Creekmur* v. *Creekmur*, 75 Va. 439.

[13, 14] While there is some conflict in the evidence, the weight and credibility of the testimony were questions for the jury, and, their findings being conclusive as to the facts, we deem it unnecessary to discuss the evidence in detail.    It sufficiently appears that James Rasnick, under his court right, held actual, continuous, exclusive, open and notorious possession of the 215 acre tract, including the land in controversy, under a *bona fide* claim of title against the title of all other persons, for more than ten years, the period of the statutory bar, and that he held a good title to said land by adverse possession.

[15, 16] The act of the General Assembly of Virginia, approved March 3, 1880, creating and establishing the county of Dickenson, provides in terms that James Rasnick's farm shall be included in the new county.    The report of the surveyors who established the county lines shows that they included his farm in Dickenson county, although it is contended that the line of the actual survey made by them left this farm in Russell county.    The plaintiff should not suffer for the oversight or error of the surveyors.    The act of the legislature and the report of the surveyors having placed James Rasnick's farm in Dickenson county, and the surveyors having neither the authority nor the power to make it a part of Russell county, their act in so running the line as to place it in Russell county is a nullity.    The deed from Warder to

Virginia, Tennessee and Carolina Coal and Iron Company, dated December 8, 1887, having never been recorded in Dickenson county and James Rasnick having no notice or knowledge of it until 1908, he was, under his deed from Warder, dated March 10, 1888, a purchaser for value and without notice, and held the legal title to the land in controversy as against the Virginia, Tennessee and Carolina Coal and Iron Company and those claiming under it.

The evidence as to the value of the timber cut and the damage done to the land in other respects, was conflicting, but there was ample evidence to support the verdict of the jury and we cannot say the damages assessed by them are excessive.

[17] The instructions, as a whole, fully propounded the law on every material question in the case and we find no error in them of which the defendant can complain. Besides, since, under the evidence, the jury could not have rendered a verdict for the defendant company, it cannot be said that it was prejudiced by the granting or refusing of instructions.

We find no error in the judgment complained of and it must be affirmed.

*Affirmed.*