Syllabus.

# Richmond.

## EDWARD W. SCOTT, JR. v. F. C. MOON AND A. L. PITTS, JR., LATE PARTNERS TRADING UNDER THE FIRM NAME OF MOON & PITTS.

November 12, 1925.

1. ATTORNEY AND CLIENT—*Action by Law—Partnership Fees—Defense that Client Only Employed One Partner—Case at Bar.*—In the instant case, an action by a firm of attorneys for fees, defendant claimed that only P., one of the partners, was employed by him, and that therefore the defendant owed nothing to the firm. From the admissions of defendant and his letters, it was clear that defendant knew of the partnership; that he conferred frequently with M., the other partner, about the cases; that he knew that the pleadings were signed by the firm, and traveled with both members of the partnership from place to place in connection with the litigation, and paid M. certain small amounts on account of fees.

   *Held:* That the evidence sufficiently showed an employment of the firm by the defendant.

2. ATTORNEY AND CLIENT—*Action for Fees—Defense of Neglect.*—In the instant case, an action by a firm of attorneys for fees, defendant claimed that the attorneys so neglected their duty to prosecute the case that he was forced to employ other attorneys, who finally compromised the suit. It appeared from the evidence that substantially the same compromise had been arranged by plaintiffs, but rejected by defendant, it also appeared that the litigation was delayed in accordance with defendant's own instructions. From defendant's own admissions it was manifest that the defense of neglect as a bar to the action was not supported.

3. ATTORNEY AND CLIENT—*Fees of Attorneys—Amount—Verdict of Jury.*— In the instant case, an action by attorneys for their fees, it was quite apparent from the evidence that plaintiffs were entitled to a substantial recovery, and unless there was some harmful error of law, a verdict for plaintiffs finally determined the matter.

4. ATTORNEY AND CLIENT—*Action to Recover Fees—Defense of Neglect of Duty by Attorneys—Exclusion of Letters of Defendant Containing Self-Serving Declarations—Case at Bar.*—In an action by attorneys to recover fees for services in litigation, the exclusion of four letters from defendant to an attorney employed by him after he became dis-

satisfied with plaintiffs, introduced to corroborate defendant's testimony that plaintiffs neglected their duty, was assigned as error. Plaintiffs were not charging defendant with a recent fabrication of testimony. It was apparent that when defendant placed the litigation in the hands of another attorney he was dissatisfied with plaintiffs.

*Held:* That whether the letters were admissible or not—and unless plaintiffs were charging defendant with a recent fabrication they were clearly inadmissible—there was no reason to doubt that the jury knew from the evidence that defendant was dissatisfied with plaintiffs' conduct of the litigation, and the admission of the letters could not possibly have changed the result.

5. Declarations and Admissions—*Self-Serving Declarations.*—The hearsay evidence rule excludes, with certain exceptions, all extra-judicial assertions, and among those most obnoxious to the rule are statements commonly known as self-service declarations.

6. Declarations and Admissions—*Prior Consistent Statements of a Witness.*—As a rule, the prior consistent statements of a witness are not receivable to corroborate his testimony, as the repetition of a story does not render it any more trustworthy. There are few exceptions to this rule.

7. Declarations and Admissions—*Self-Serving Declarations—Witness Attacked for Bias.*—Where the testimony of a party is attacked, declarations of a self-serving character may be admitted, provided that they were made at a time when a motive to misrepresent the facts did not exist. Where the impeachment consists in a charge of bias, or interest, or corruption, there is value in showing a prior consistent statement before the time when the supposed bias, or interest, or corruption could have existed.

8. Attorney and Client—*Action for Fees by Firm of Attorneys—Defense that only One Partner of the Firm was Employed—Instructions.*—In the instant case, an action by a firm of attorneys for fees for services rendered, the defense was that defendant only employed one of the partners and not the firm. The evidence left no doubt of the employment of the firm. Defendant assigned as error the refusal of the trial court to give instructions based upon the claim that defendant never employed the plaintiffs, and directing the jury to find a verdict for the defendant.

*Held:* That the instructions were erroneous in directing a verdict for the defendant, and were also misleading because the evidence clearly showed employment of the firm by defendant.

9. Attorney and Client—*Partnership—Employment of One Member of a Partnership—Burden of Proof—Case at Bar.*—While it is doubtless true that a client may employ one member of a copartnership to conduct his litigation and exclude the other from any claim for compensation from him, because he is not employed, still the burden is

upon one who asserts such an unusual contract to prove it, and in this case the letters and testimony of the defendant himself demonstrate that he had no such special contract.

10.   VERDICT—*Question by Jury as to Evidence—Failure to Resolve a Dispute as to Testimony before Verdict.*—In the instant case, an action by attorneys for their services to defendant in certain litigation, defendant had given a check for $375 to one of the attorneys to pay for printing the record, which was thereafter recovered as part of the costs, and defendant told the attorney to retain it and apply it on his fee. The jury, while considering their verdict, came into court and asked whether this $375 was ever repaid to the defendant. Counsel for plaintiffs asserted that one of the plaintiffs has testified that the check had been repaid. This was a mistake. Counsel for defendant moved that evidence be heard upon this point about which dispute had for the first time arisen. This the court overruled. The jury returned a verdict for plaintiffs.

    *Held:*   That the disputed fact as to the check for $375 should have been settled before the verdict, and the verdict not disclosing whether or not it was based on the erroneous statement of counsel for plaintiffs that this check had been returned to defendant, the judgment would be reversed, unless the plaintiffs elected to relinquish $375 of their verdict.

Error to a judgment of the Circuit Court of Albemarle county, in a proceeding by motion for a judgment for money. Judgment for plaintiffs. Defendant assigns error.

                                  *Affirmed conditionally.*

The opinion states the case.

*R. C. Blackford, Frank L. Thomasson* and *Homer Richey,* for the plaintiff in error.

*Perkins, Walker & Battle,* for the defendants in error.

PRENTIS, P., delivered the opinion of the court.

Edward W. Scott, Jr., is here complaining of an adverse judgment in favor of Moon & Pitts, attorneys,

hereinafter called the plaintiffs, for a balance claimed
to be due them for fees in three cases. The plaintiffs
claimed $3,450, and after a hotly contested. trial
there was a verdict and judgment in favor of the plain-
tiffs for $1,800, with interest from January 23, 1923.

[1] 1. One of the defenses, stated generally, is
based upon a claim that Pitts alone was employed,
and that therefore the defendant owes nothing to the
firm of Moon & Pitts.

It is only necessary upon this point to say that it
very clearly appears from the admissions of the defend-
ant, Scott, on the witness stand, and from his letters,
that while his first interview was with Pitts, he then
knew that Moon was his partner and associated with
him in the practice of law; that he afterwards con-
ferred with Moon frequently about these cases, knew
that the pleadings were signed by Moon & Pitts,
traveled with them from place to place in connection
with the litigation, and paid Moon individually cer-
tain small amounts on account of fees therein, so that
there can be no doubt whatever that he employed the
plaintiffs, accepted their services in all three of these
cases, and hence the jury could not have found other-
wise upon this issue.

[2] 2. The defendant also claims, however, as to one
of these cases—that is, the chancery suit instituted
for him by them against the Shenandoah Life Insurance
Company and others for the cancellation of certain
large stock subscriptions, in which a fee of $3,000 was
claimed—that the attorneys so neglected their duty to
prosecute the case that he was forced to employ and
pay other attorneys who finally compromised it.

It appears that Scott had subscribed to $29,250 of
the capital stock of the Shenandoah Life Insurance
Company, which had just been organized. He had

given notes for the deferred payments on this stock subscription, the Staunton National Bank had acquired $7,000 of these notes and had instituted an action against Scott on one for $1,500 which had matured. The chancery suit was brought to enjoin both the bank from prosecuting its action and the Life Insurance Company from instituting any other action on any of the notes which he had so given for its stock; to require the money that he had already paid to be refunded; to enjoin the insurance company from withdrawing any money which it had deposited in a bank at Esmont controlled and largely owned by Scott; and to set aside and annull the entire transaction between Scott and the insurance company. This suit was instituted in Albemarle county September 29, 1917. The preliminary injunction was granted as prayed for, but soon thereafter the Staunton National Bank, having satisfied the court that it was a holder in good faith and for value of these notes of Scott, so much of the injunction as restrained the prosecution of the action of the bank was dissolved, but was in all other respects continued. This suit was not finally ended until nearly five years thereafter, September 6, 1922, at which time it was compromised—$10,740 in cash, with interest, was returned to Scott and certain of his notes aggregating $10,500 were also returned to him. It appears from the testimony of the plaintiffs, as well as from the admissions of Scott, that substantially the same compromise had been tentatively arranged by the plaintiffs, through Moon, with Andrews as a representative of the insurance company, two years previously, but Scott then peremptorily refused to consider it unless the insurance company would also pay his attorneys' fees.

There is testimony to the effect that the suit was not

vigorously prosecuted by the plaintiffs during the two years referred to. Their defense is that this was in accordance with Scott's own wishes, because there was at the same time in his bank at Esmont a large deposit upon which only three per cent interest was being paid, while his claim against the company, if finally established, would bear interest at six per cent.

There is this striking confirmation of the claim that in the early stages of the litigation the chancery suit was delayed in accordance with the defendant's instructions. In answer to the question: "Was it to your advantage in any way to have the *Shenandoah Case* delayed, or to the advantage of the bank? (Referring to the Esmont bank), Scott said: "Well, it would have been to my advantage if they had kept the agreement, but that was one reason I got out. I didn't have confidence in them. If they had kept their original agreement, it would have been to advantage, but they didn't keep their agreement as it happened," (the agreement referred to being the promise to keep a large amount deposited in Scott's Esmont bank). Then as to the delay complained of, the defendant testified thus:

"Q. Mr. Scott, did you make complaint of the delay in the prosecution of the *Shenandoah Life Case?*

"A. I made complaint to this extent, that when I employed Mr. Lamar as leading counsel, and additional Virginia counsel, it showed I wanted to push the case, and I was dissatisfied. If I hadn't been dissatisfied I wouldn't have done that, and I did it with the knowledge and consent of Mr. Pitts; and I presumed he knew why I did it. Certainly didn't do it for the fun of spending money."

It is observed in passing that the employment of Lamar in Washington as leading counsel, in June,

1919, and Farr thereafter as additional Virginia counsel, was long after the suit had been instituted.

Furthermore, as to this, the defendant testified:

"Q. You were speaking of the neglect of your counsel. Did your counsel neglect that *Staunton Bank Case?*

"A. I don't think I have told you anything about neglect of counsel, Mr. Walker. I said this: When I employed Mr. Lamar and Mr. Lamar requested me to employ Mr. Farr, that I presumed that Mr. Pitts would understand that I wanted the case hurried up, because it had been going so slow. I don't think I have said anything in regard to neglect. I said neglect after Mr. Farr, and before Mr. Farr, that was a question between Mr. Pitts and Mr. Lamar. I wasn't in close touch. All I told Mr. Lamar as senior counsel was I wanted him to push it.

"Q. You have never said Mr. Pitts neglected the case?

"A. I don't think I have said it, on the witness stand.

"Q. And you don't say it now?

"A. I would prefer that if anybody criticizes Mr. Pitts' action in the case, let Mr. Lamar, senior counsel in the case, do so.

"Q. And you don't criticize Mr. Moon, do you?

"A. I don't know why I should criticize Mr. Moon, I never had any association with him.

"Q. Then on the witness stand and before the jury you say you have no criticism to make of Mr. Pitts, but would prefer it being made by Mr. Lamar?

"A. I have not yet.

"Q. Do you want to criticize him?

"A. I don't know why I should."

With these admissions in the record, it is manifest

that the defense of neglect as a bar to the action is not supported, and clear that the plaintiffs were entitled to have the jury estimate the value of their services and, unless they had already been sufficiently paid, to find a verdict in their favor.

It would unduly prolong this opinion and serve no good purpose to attempt to review in detail the varied and variable statements of the witnesses on the controverted points in an opinion of reasonable length. It is sufficient to say that the only material issue which was involved was fairly submitted to the jury under proper instructions and their verdict, substantially reducing the fees claimed, is their response thereto.

[3] It may be said in passing that in one of the cases, Scott v. Albemarle Horse Show Association, finally decided by this court in 128 Va. 517, 104 S. E. 842, a small balance is claimed by the plaintiffs. In the common law action of the Staunton National Bank against Scott, a fee of $150 is here claimed, and does not appear to have been specifically paid. As to the Shenandoah Life Insurance Company Case, it appears that both of the plaintiffs here had numerous interviews with Scott and with opposing counsel, went to Staunton, Lynchburg, Roanoke, Esmont, Washington and Baltimore at various times; that they went to Richmond to examine the records in the office of the State Corporation Commission and the Insurance Commissioner, and they prepared and signed all of the pleadings in the case. It is quite apparent, therefore, that the plaintiffs were entitled to a substantial recovery, unless they have been already sufficiently paid and have forfeited their right to additional compensation by neglect. Unless there had been some harmful error of law, the verdict finally determines the matter here, for the evidence of the plaintiffs fully supports the verdict.

(3) There are seventeen assignments of error. It is only necessary to refer to some of them, because few of them present any debatable question.

[4, 7] (a) It is claimed that harmful error was committed against the defendant by the exclusion of four letters from Scott to his attorney, Lamar, in Washington, which were introduced to corroborate Scott's testimony that the plaintiffs neglected their duty. This claim is based upon the rule that where the testimony of a party is attacked upon the ground that it is a recent fabrication, declarations of a self-serving character may be admitted, provided they were made at a time when a motive to misrepresent the facts did not exist.

The suit, as has been shown, had been instituted in 1917. These letters were written in May, August and December, 1921, and February, 1922, long after most of the work done by the plaintiffs had been performed. We find no sufficient basis for the claim that the plaintiffs were charging Scott with a recent fabrication. Fairly construed, their testimony is only a denial that they had neglected their duty, for it is apparent that when Scott placed the litigation in the hands of Lamar, he did so because he was dissatisfied with the plaintiffs as his attorneys. Whether or not these letters should have been admitted may be a close question, but inasmuch as the plaintiffs and defendant had each testified fully as to all of these occurrences and there is not the slightest reason to doubt that the jury knew from his evidence that Scott was then dissatisfied with their conduct of the litigation, it is difficult to perceive how the admission of these letters could possibly have changed the result. Unless the plaintiffs were charging Scott with a recent fabrication, they were clearly inadmissible.

Among the recent statements of this court on the subject of self-serving declarations, is that found in *Hilleary* v. *Hubbell*, 119 Va. 123, 89 S. E. 111, where Kelly, J., in delivering the opinion, said: "There is no view of the case in which the evidence of his report to the commissioner is properly admissible. It plainly falls within the prohibition against hearsay evidence. The hearsay rule excludes (with certain exceptions not material here) all extra-judicial assertions; and among those most obnoxious to the rule are statements commonly known as self-serving declarations. 'It would be obviously unsafe,' says Professor Jones in his Commentaries on Evidence, 'if parties to litigation were, without restriction, allowed to support their claims by proving their own statements made out of court. Such practice would be open not only to all the objections which exist against the admission of hearsay in general, but also open the door to fraud and to the fabrication of testimony.' 2 Jones' Com. on Ev., sec. 235-a; 1 R. C. L., sec. 5, p. 470; *Singer Mfg. Co.* v. *Bryant*, 105 Va. 403, 411-12 [412], 54 S. E. 320."

In *Gallion* v. *Winfree*, 129 Va. 127, 105 S. E. 540, discussing a similar question, Burks, J., in delivering the opinion, said: "As a rule, the prior consistent statements of a witness are not receivable to corroborate his testimony, as the repetition of a story does not render it any more trustworthy. There are few exceptions to this rule. In 1 Green. on Ev., sec. 469-b (16th ed. by Wigmore), it is said: 'Where the impeachment consists in a charge of bias, or interest, or corruption there is value in showing a prior consistent statement before the time when the supposed bias, or interest, or corruption could have existed; for it thus appears that his present testimony cannot be attributed to bias or the like.' But no such facts exist in the instant

case. The contract between the parties was made before the conversation introduced in evidence was had, and the interest of the plaintiff was the same at the date of the conversation as at the time of the trial. So that the conversation was not admissible under this exception to the rule. It was said in the argument that after the introduction of the letter aforesaid, 'the objectionable evidence was proper to show the good intention and good faith of Winfree,' but such good intention and good faith cannot be shown in that way. The statement was simply self-serving. It was Winfree's statement that he had a contract with Gallion and Gregory which was sought to be used to prove the existence of such a contract. It is said by Wigmore, in his edition of Greenleaf, *ubi supra*, 'It is sometimes said that this sort of evidence is admissible after impeachment of any sort, in particular after any impeachment by cross-examination, but there is no reason for such a loose rule.' The author, in a note to the above section, referring to the 'loose rule,' says: 'Apart from North Carolina, it is probably not law anywhere today.' "

So that we do not think that the exclusion of these letters was erroneous; but even if so, in view of the other facts of this case, the error was harmless.

(b) The refusal to give three instructions, offered by the plaintiffs, is also assigned as error. They present substantially the same question, and it is only necessary to quote one of them, which reads:

"The court instructs the jury that the plaintiffs in this case allege a contract of employment between the defendant, Scott, on the one hand, and the firm of Moon & Pitts, on the other; that it is incumbent upon the plaintiffs, Moon & Pitts, to prove said contract as alleged; that they cannot allege a contract with the firm of Moon & Pitts and recover upon proof of a

contract with the plaintiff, Pitts, only; therefore, if the jury believes from the evidence that no contract with the firm of Moon & Pitts has been shown (the burden being upon the plaintiffs to show such a contract by a preponderance of the evidence) then they must find for the defendant Scott."

[8-10] Each of these instructions is based upon the claim that the defendant never employed the plaintiffs, and directed the jury to find a verdict for the defendant. The refusal of each of them appears to us to be so plainly right that we deem it only necessary to say that under the facts in the case they were not only erroneous in directing a verdict for the defendant, but also misleading because the evidence clearly showed, without contradiction, that Moon and Pitts were partners; that the defendant accepted the services of Moon & Pitts in the litigation; that as a co-partnership they rendered these services; that with the knowledge, acquiescence and consent of the defendant they both conducted the litigation and both received partial payment on account of the fees due. While it is doubtless true that a client may employ one member of a copartnership to conduct his litigation and exclude the other from any claim for compensation from him, because he is not employed, still the burden is upon one who asserts such an unusual contract to prove it, and in this case the letters and testimony of the defendant himself demonstrate that he had no such special contract with Pitts to the exclusion of Moon.

(c) The other error assigned which requires attention is that presented by the defendant's tenth exception, from which this appears: Scott had testified that he had given Pitts his check for $375 for printing the record in the *Horse Show Case*, which was thereafter recovered as part of the costs in that case, and that

he had told Pitts to retain it and apply it on his fee in that case. The jury, while they were considering of their verdict, came into court and asked the specific question whether this $375 was ever repaid to the defendant Scott. Counsel for Scott then stated that it was his understanding that it was admitted that no part of this money had ever been so repaid; but counsel for the plaintiffs contended that it had been, and that the plaintiff, Pitts, had so testified. It was then stated by counsel for Scott that the check for the costs in this case had been paid to the plaintiff, Pitts, and that it had never been repaid to Scott. Then it was demanded by counsel for Scott, in the presence of the court and jury, who were asking the specific question referred to, that counsel for the plaintiffs produce to the court and the jury these checks and any other documents touching the case which they had recently obtained possession of, with which demand counsel for the plaintiffs refused to comply. Then Scott's counsel moved the court to compel the production of these checks and to hear any other proper evidence upon this point about which the dispute had now for the first time arisen; but this motion the court overruled.

The fact is that Scott had testified that no part of this money had ever been repaid to him, and the attorneys for the plaintiffs were mistaken in their contention that the plaintiff, Pitts, had testified that it had been so repaid.

Now, if the jury had not returned into court and asked this specific question, it would be here presumed that they remembered Scott's testimony and also that Pitts had not denied the fact referred to; but inasmuch as the record shows that the jury had disagreed as to this testimony and wished to have the point cleared up; that instead of being cleared up counsel for the plain-

tiffs asserted, contrary to the fact, that Pitts had so testified, we find ourselves in this position:   We do not know whether the verdict is based upon the erroneous statement of counsel for the plaintiffs, or upon the fact so clearly shown by the record, namely, that this amount had been received by Pitts and had never been credited.   If the jury in their consideration of the case failed to take this $375 into account, then they have ignored material testimony and the verdict to this extent is against the evidence.   We cannot tell from the record which is true.   The disputed fact should have been settled before the verdict.   We know of no way to correct this error except to place the responsibility where it belongs.   It would certainly be unjust to impose its consequences upon Scott.

Our conclusion, then, is to apply the rule which was applied in *Washington & O. D. Ry.* v. *Westinghouse Co.*, 120 Va. 620, 89 S. E. 131, 91 S. E. 646.   For the error of the trial court in refusing to have this dispute settled by the evidence before the verdict and at the time the jury asked for the information, the judgment must be reversed, unless the plaintiffs themselves correct the error.   Our conclusion, therefore, is to reverse the judgment, unless the plaintiffs shall within sixty days from the date of our order elect in writing to relinquish $375 of the principal sum found by the jury (such relinquishment to be filed with the papers in the cause in the clerk's office of the Circuit Court of Albemarle county as a part of the record).   In that event the said judgment shall stand affirmed.   If they refuse to relinquish this $375, then the judgment will be reversed and there shall be a new trial in accordance with the views which we have here expressed.

*Affirmed conditionally.*