## WILLIAM IVORY FAISON, ET AL.

### V.

## GAIL M. HUDSON, ADMINISTRATOR OF THE ESTATE OF ULUS GRANT HUDSON, JR., DECEASED

Record No. 910968

April 17, 1992

Present: All the Justices

E. Lewis Kincer, Jr. (Mezzullo & McCandlish, on briefs), for appellants.

Dennis W. Dohnal (Larry A. Pochucha; Bremner, Baber & Janus, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this appeal, we determine whether the peremptory striking of a black person from the jury panel violated the rule first pronounced in *Batson* v. *Kentucky*, 476 U.S. 79 (1986), and extended to civil litigation in *Edmonson* v. *Leesville Concrete Co.*, 500 U.S. ____, 111 S.Ct. 2077 (1991). Other issues relate to jury instructions and to the admissibility of a witness's prior consistent statement.

I

Gail M. Hudson, administrator of the estate of her deceased husband, Ulus Grant Hudson, Jr. (the Administrator), brought a wrongful death action against William Ivory Faison and Faison & Faison Hauling, Inc. (collectively, Faison). The Administrator alleged that Hudson's death was caused by Faison's negligent operation of a motor vehicle.

On October 17, 1989, a dump truck operated by Faison collided with an automobile driven by Hudson, resulting in Hudson's death. The collision occurred at the intersection of Nine Mile Road and Airport Drive in Henrico County when Hudson made a left turn in front of Faison's approaching truck. There was testimony that each operator had proceeded on a green traffic light.

A jury returned a verdict in favor of the Administrator in the amount of $410,000, and the trial court entered judgment on the verdict. Faison appeals.

II

The Administrator is a white person; William Ivory Faison is a black man. During jury selection, 13 veniremen were qualified for the jury panel. Twelve were white; one venireman, Dorothy

Gregg, was black. Before the jury was sworn and the remaining veniremen were excused, Faison objected to the Administrator's use of a peremptory strike to remove Gregg from the panel.* Faison contended at trial, as he does on appeal, that the striking of Gregg was racially motivated and in contravention of *Batson.*

When the trial court asked counsel for the Administrator to respond to Faison's objection, counsel stated that he did not think that the ruling in *Batson,* a criminal case, applied to a civil case. The Administrator's counsel also stated the following:

> In addition, I would advise the Court that there were neutral reasons for striking that juror, one being her age of 43 being exactly the same age as the defendant in this case.

> Additionally, in terms of attitude, demeanor, it was just the collective impression of [co-counsel] and myself that other jurors would be better suited to try this case. Her occupation as well was another factor, as a radiologist technologist at [the Medical College of Virginia].

In overruling Faison's objection, the trial court opined as follows:

> Well, I don't think that you have given me a racially neutral reason. However, as the law stands now, as I understand it, *Batson* has not been extended to civil cases and I don't feel that at this time I can have any control over that, *but I will for the record find that there's not a racially neutral explanation* [for striking this venireman].

(Emphasis added.)

In *Batson,* the Supreme Court held, *inter alia,* that the equal protection clause forbids a prosecutor to challenge a potential juror, by exercising a peremptory strike, solely on account of the juror's race or on the assumption that black jurors as a group will be unable impartially to consider a state's case against a black defendant. 476 U.S. at 89; *accord Powers* v. *Ohio,* 499 U.S. ____, 111 S.Ct. 1364 (1991). In *Edmonson,* decided after

---

* We reject the Administrator's contention that Faison violated the contemporaneous objection rule. It is clear from the record that "the objection was stated with reasonable certainty at the time of the [trial court's] ruling." Rule 5:25.

the trial of the present case, the Supreme Court extended the *Batson* holding to civil cases. 500 U.S. at ____, 111 S.Ct. at 2080. The Court stated its ruling as follows:

> We must decide . . . whether a private litigant in a civil case may use peremptory challenges to exclude jurors on account of their race. Recognizing the impropriety of racial bias in the courtroom, we hold the race-based exclusion violates the equal protection rights of the challenged jurors.

*Id.* In light of *Edmonson*, therefore, the trial court erroneously ruled that *Batson* did not apply in the present case.

The Administrator contends, nonetheless, that the trial court's ruling should be affirmed because (1) the *Batson* procedural requirements were not followed, and (2) the trial court's finding that the Administrator failed to advance racially neutral reasons for excluding juror Gregg is not supported by the record.

### A

With respect to the procedural contention, the Administrator claims that "at the time of Faison's motion there was no evidence before the court which would establish a prima facie case of jury discrimination nor did Faison direct the court's attention to such evidence." Quoting *Batson*, the Administrator asserts that, in order to establish a *prima facie* case of discrimination, the moving party must:

> first . . . show that he is a member of a cognizable racial group . . . and that the [opposition] has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the [opposition] used that practice to exclude the veniremen from the petit jury on account of their race.

476 U.S. at 96 (citations omitted).

■ Under the circumstances in the present case, we do not think that *Batson* required the trial court to make an explicit finding that Faison had established a *prima facie* case of discrimination. Implicit in the trial court's ruling that counsel had not stated "a racially neutral explanation" was a finding that Faison had established a *prima facie* case. Moreover, we agree that Faison presented sufficient facts to establish a *prima facie* case of discrimination. Faison is a black man, and the Administrator removed from the venire the only member of Faison's race. Additionally, Faison was entitled to rely on the fact, which cannot be disputed, that peremptory challenges constitute a practice that permits " 'those to discriminate who are of a mind to discriminate.' " *Batson*, 476 U.S. at 96 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)).

Furthermore, when the Administrator's counsel undertook to articulate reasons for striking Gregg without first raising the procedural issue whether a *prima facie* case had been established, the issue was waived and became irrelevant. *See United States v. Lane*, 866 F.2d 103, 105 (4th Cir. 1989) (court would not address question whether defendant established *prima facie* showing when prosecutor articulated reasons for peremptory strikes). For these reasons, we reject the Administrator's procedural contention.

## B

Next, we consider whether the record supports the trial court's finding that the Administrator's counsel failed to advance racially neutral reasons for striking Gregg. A trial court, unlike an appellate court, has the opportunity to see and hear the actors. Consequently, we consistently have given deference to a trial court's findings during jury *voir dire*, and we will not disturb those findings on appeal absent a showing of manifest error or abuse of discretion. *See, e.g., Stockton v. Commonwealth*, 241 Va. 192, 200, 402 S.E.2d 196, 206, *cert. denied*, 112 S.Ct. 280 (1991); *Eaton v. Commonwealth*, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990); *Spencer v. Commonwealth*, 238 Va. 563, 572, 385 S.E.2d 850, 855 (1989), *cert. denied*, 493 U.S. 1093 (1990); *Mackall v. Commonwealth*, 236 Va. 240, 252, 372 S.E.2d 759, 767 (1988), *cert. denied*, 492 U.S. 925 (1989).

More on point to the issue presented, the Supreme Court in *Batson* stated that a trial court has "the duty to determine if the defendant has established purposeful discrimination." 476 U.S. at

98. Additionally, because "the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id.* n.21.

■ Giving the trial court's finding in the present case the appropriate deference, we cannot say that the court abused its discretion or committed manifest error in finding for the record that the Administrator had not given racially neutral reasons for striking Gregg. In view of that finding and of *Edmonson*, we hold that the trial court erred in allowing the challenged peremptory striking of Gregg. In light of this holding, the other issues raised by Faison in this appeal may arise upon retrial, and, therefore, we will consider them here.

## III

Charles W. Layne was called as a witness for the Administrator. At the time of the accident, he was employed as an attendant at a gasoline station located on the southwest corner of the intersection in question. According to Layne, immediately prior to the accident, he was pumping gasoline into Karen Troutman's automobile which was located on the outside portion of the gas pump island. Layne testified that, when he heard the Hudson and Faison vehicles collide, he looked up and noticed that the traffic light controlling the Hudson vehicle was yellow.

Troutman, called as a witness for Faison, testified that her automobile was located on the inside of the gas pump island. She also testified that Layne was talking to her when the collision occurred.

Ronald J. Smith, a Henrico County police officer who investigated the accident, also testified as a witness for Faison. Smith testified that Layne told him the traffic light in question was yellow. Smith also testified, however, that when he went to the spot from which Layne had observed the light, he, Smith, could not see the color of the light due to a side shielding on the light.

Thereafter, the Administrator called William F. Motley, Jr., as a rebuttal witness. Motley also was an employee at the gasoline station at the time of the accident. Over Faison's objection, the trial court allowed Motley to testify that, approximately five minutes after the accident, Layne told Motley that, after Layne heard the collision, he turned his head and saw that the traffic light in question was amber. Faison contends that Layne's out-of-court statement to Motley was inadmissible hearsay. The Administrator

claims that the statement was admissible under one of the exceptions to the hearsay rule.

The Administrator contends that Layne's statement to Motley was admissible as an "excited utterance." We have said that resolution of this issue depends upon the circumstances of each particular case and rests within the sound discretion and judgment of the trial court. *Clark v. Commonwealth*, 235 Va. 287, 292, 367 S.E.2d 483, 486 (1988). The trial court ruled that the statement did not constitute an "excited utterance," and from our review of the circumstances surrounding Layne's statement, we conclude that the trial court's ruling on the issue was correct.

The Administrator also contends that Layne's statement to Motley was an admissible prior consistent statement. As a general rule, a prior consistent statement of a witness is inadmissible hearsay. *Graham v. Danko*, 204 Va. 135, 138, 129 S.E.2d 825, 827 (1963); *Crowson v. Swan*, 164 Va. 82, 94, 178 S.E. 898, 903 (1935); *Scott v. Moon*, 143 Va. 425, 434, 130 S.E. 241, 243 (1925); *Gallion v. Winfree*, 129 Va. 122, 127, 105 S.E. 539, 540 (1921); *Repass v. Richmond*, 99 Va. 508, 515, 39 S.E. 160, 163 (1901); *Howard v. Commonwealth*, 81 Va. 488, 490 (1886). To allow such a statement to corroborate and buttress a witness's testimony would be an unsafe practice, one which not only would be subject to all the objections that exist against the admission of hearsay in general but also would tend to foster fraud and the fabrication of testimony. *Scott*, 143 Va. at 434, 130 S.E. at 243. Indeed, it has been said that " 'the repetition of a story does not render it any more trustworthy.' " *Id.*

We have recognized, however, a few narrowly circumscribed exceptions to the general rule excluding a prior consistent statement. In *Gallion*, we stated that, when a witness is impeached by "a charge of bias, or interest, or corruption," a prior consistent statement made by the witness is admissible if it was made "before the time when the supposed bias, or interest, or corruption could have existed." 129 Va. at 127, 105 S.E. at 540.

We also have recognized the so-called "recent fabrication" or "motive to falsify" exception:

Where a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of

such an account could be foreseen or motives of interest would have induced a different statement, is admissible.

*Honaker Lumber Co.* v. *Kiser*, 134 Va. 50, 60, 113 S.E. 718, 721 (1922); *accord Graham*, 204 Va. at 138, 129 S.E.2d at 827.

Closely related is the so-called "design to misrepresent" exception. "[W]here a design to misrepresent is charged upon the witness in consequence of his relation to the party or the cause, it may be shown that he made a similar statement before that relation existed." *Repass*, 99 Va. at 515, 39 S.E. at 163; *accord Crowson*, 164 Va. at 94, 178 S.E. at 903.

■ Additionally, we have held that "a prior consistent statement is admissible after a witness's testimony has been attacked by the admission of a prior inconsistent statement." *Clere* v. *Commonwealth*, 212 Va. 472, 473, 184 S.E.2d 820, 821 (1971). We reasoned that "[t]he fact that a witness made a prior consistent statement, as well as an inconsistent statement, is relevant in considering the impeaching effect of the inconsistent statement on the witness's testimony." *Id.*

There is nothing in the record in the present case to suggest that Layne was impeached by "a charge of bias, or interest, or corruption." The record does not support a finding of a charge that Layne's testimony was a "recent fabrication" or that he had some "motive for testifying falsely." The record also does not show that Layne, because of any relation to a party litigant or to the case, was charged with a "design to misrepresent."

The Administrator claims that the testimony of Troutman and Smith brings Layne's out-of-court statement within the "prior inconsistent statement" exception. We do not agree.

■ While their testimony, especially Smith's, tended to impeach Layne's testimony, Layne remained consistent in his statement that the traffic light was yellow when he observed it. The sort of impeachment evidence presented by the Administrator does not trigger application of any of the recognized exceptions to the general rule. Indeed, we have said that to allow the admission of a prior consistent statement after impeachment of just "any sort" would create an unreasonably "loose rule." *Gallion*, 129 Va. at 127, 105 S.E. at 540.

We do not think that Layne's out-of-court statement to Motley falls within any of the recognized exceptions to the general rule

against hearsay evidence. Consequently, we conclude that the trial court erred in admitting the statement into evidence.

## IV

Officer Smith testified that the Administrator told him that there was another witness to the accident. According to Smith, the Administrator told him that the witness had stated that, while the witness's vehicle was in a left-turn lane of the intersection in question, Hudson drove his vehicle around the witness's vehicle, turned left against a red traffic light, and collided with Faison. Smith stated that the Administrator also told him that the witness's name was written on a piece of paper that was on a mantel in the Adminstrator's home. The Administrator categorically denied that such a witness existed or that she made such a statement to Officer Smith.

Based upon Smith's testimony, Faison requested a so-called "missing witness" instruction, which reads as follows:

If you believe that a party, without explanation, fails to call an available witness who has knowledge of necessary and material facts, you may presume that, if called, that witness's testimony would have been unfavorable to the party who failed to call him.

The trial court refused the instruction, and Faison has assigned error to the ruling.

*Availability* of a witness is one essential element for invoking the "missing witness" rule. *Neeley* v. *Johnson*, 215 Va. 565, 573, 211 S.E.2d 100, 107 (1975). As noted, the evidence respecting the existence and availability of such a witness was in sharp conflict. Apparently, the trial court was unconvinced that the witness was available, and in view of the record before us, we cannot say that the trial court erred in refusing the instruction.

## V

The trial court, over Faison's objection, instructed the jury, *inter alia*, that the driver of a vehicle has a duty to use ordinary care "to operate his vehicle at a reasonable speed under the existing conditions." Faison contends that the trial court erred in granting this instruction because "[t]he record . . . is devoid of any evidence of excessive speed on the part of Faison as he ap-

proached the intersection." Therefore, he asserts, there was no evidence to support the giving of the instruction. We do not agree.

The evidence suggests that the intersection in question was extremely congested at the time of the accident. One witness testified that, just before the collision, she heard a "loud whoosh, you know, just a fast moving vehicle." Faison testified that, as he approached the intersection, he slowed to 35 or 40 miles per hour.

While there was no evidence that Faison was exceeding the posted speed limit of 45 miles per hour, "[t]he posted speed limit does not determine whether a particular speed is reasonable under the circumstances." *West v. Critzer*, 238 Va. 356, 359, 383 S.E.2d 726, 728 (1989); *accord Goodwin and Reed v. Gilman*, 208 Va. 422, 431, 157 S.E.2d 912, 919 (1967); *Hudgins v. Jones*, 205 Va. 495, 499, 138 S.E.2d 16, 20 (1964). We think, therefore, that the question whether Faison's speed was reasonable under the attending facts and circumstances properly was submitted to the jury.

## VI

For the reasons stated, we conclude that the trial court did not err in refusing the "missing witness" instruction and in granting the instruction regarding excessive speed. We do conclude, however, that the trial court erred in allowing the Administrator to exercise a peremptory strike to remove Gregg from the jury panel and in admitting into evidence the out-of-court statement made by Layne to Motley.

Accordingly, we will reverse the trial court's judgment and remand the case for a new trial consistent with the views expressed in this opinion.

*Reversed and remanded.*

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting in part.

I agree with the majority's conclusion that Layne's extra-judicial statement to Motley was inadmissible hearsay and that the trial court erred in admitting the statement into evidence. I also believe that this error was reversible error, thus rendering the entire discussion contained in Parts I and II of the majority opinion, dealing with the juror issue, wholly advisory in nature and mere dicta unnecessary to a decision of the appeal.

In our adversary system of justice, appellate courts do not sit to render opinions on moot questions or abstract matters. Instead, appellate courts consider and decide only questions arising in an actual controversy which require a determination of issues affecting the rights of a party to the litigation. *Hallmark* v. *Jones*, 207 Va. 968, 970-71, 154 S.E.2d 5, 6-7 (1967). In this case, once the determination is made that error occurred in the admission of the evidence, no discussion of the juror issue is necessary because that error, standing alone, requires a reversal and the juror issue will not arise upon retrial.

Even if it is actually necessary to rule on the juror issue, I disagree with the majority's decision on that question. In my opinion, the Administrator gave racially neutral reasons for striking the juror. Considerations of age, demeanor, and occupation, the reasons used for striking the juror, have nothing to do with race. Any competent trial attorney should consider age, demeanor, and occupation in deciding how to employ peremptory strikes.

And, the trial judge's finding "that there's not a racially neutral explanation" is not binding on this Court on appeal because, under the circumstances of this case, this is a mixed ruling of law and fact. Even though this Court is bound by the factual findings of a trial court, if supported by credible evidence, a mixed finding of law and fact is properly reviewable on appeal. *City of Richmond* v. *Braxton*, 230 Va. 161, 163-64, 335 S.E.2d 259, 261 (1985). Thus, I would hold that the rule of *Edmonson* v. *Leesville Concrete Co.*, 500 U.S. ____, 111 S.Ct. 2077 (1991), has not been violated because the exclusion of the juror in question was not race-based.