### Richmond.

### GALLION & GREGORY V. WINFREE.

#### January 20, 1921.

1. ORDER OF PROOF.—*Discretion of Court.*—The order of the introduction of evidence is left largely to the discretion of the trial court, whose ruling thereon will not be disturbed unless plainly prejudicial to the rights and interests of the party complaining thereof.

2. DECLARATIONS AND ADMISSIONS. — *Corroboration of Witness— Prior Consistent Statements.*—The prior consistent statements of a witness are not receivable to corroborate his testimony, as the repetition of a story does not render it any more trustworthy.

3. DECLARATIONS AND ADMISSIONS.—*Impeachment of Witness—Prior Consistent Statements.*—Where the impeachment of a witness consists in a charge of bias or interest or corruption, a prior consistent statement of the witness before the time when the supposed bias, or interest, or corruption could have existed, is admissible.

4. DECLARATIONS AND ADMISSIONS. — *Self-Serving Declarations — Case at Bar.*—In an action to recover damages for breach of an oral contract for the division of commissions on a sale of timber, plaintiff and the vendors of the timber testified that when plaintiff applied to the vendors to be allowed to sell the timber, the vendors stated that the timber had been listed with defendants, and that thereupon plaintiff stated: "That is all right; I am in on that with them. I have a contract with defendants."

   *Held:* That this statement of plaintiff was inadmissible as self-serving, notwithstanding the introduction by defendant of a letter by plaintiff tending to show that plaintiff was not claiming at the time the letter was written the interest in the commissions that he claimed in his action.

5. DECLARATIONS AND ADMISSIONS. — *Self-Serving Declarations — Witness a Party.*—Where a witness is also a party to the suit, and to the contract which is the subject matter of the suit, his own prior self-serving declarations are inadmissible.

6. APPEAL AND ERROR.—*Judgment of Appellate Court—Remand.*—
   Where with the objectionable testimony admitted by the lower
   court stricken out, the case is not left in such condition that
   final judgment can be entered in the Supreme Court of Ap-
   peals under the provisions of section 6365, Code of 1919, it will
   be remanded for a new trial to be had in conformity with
   the opinion of the Supreme Court of Appeals.

Error to a judgment of the Circuit Court of Lunenburg
county, in a proceeding by motion for a judgment for dam-
ages. Judgment for plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Geo. E. Allen,* for the plaintiff in error.

*W. Moncure Gravatt,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is an action to recover damages for breach of an
oral contract for the division of commissions on a sale of
real estate. The parties admit the existence of a contract,
but their evidence is in direct conflict as to the terms of
that contract. The plaintiff, Winfree, claims that by the
contract he was to furnish the defendants (Gallion & Greg-
ory) the names of all timber people who he thought would
be interested in buying timber in Lunenburg and near by
counties, and also to procure such tracts of timber for sale
as he could; that the defendants were to look after the cor-
respondence and make such sales as they could, and if the
defendant sold any timber, whether the tract were fur-
nished by Winfree or not, to any of the parties whose
names had been furnished by Winfree, or if they should
sell any of the tracts secured by Winfree to any person

whatever, in either event they would divide the commissions for the sale with him; that he furnished the defendants the names of twenty-three persons interested in the purchase of timber, among them Baptist & Goode, who were then unknown to the defendants; that at that time there was a large tract of timber land in Amelia county, known as the Taylor tract, and that he went with Gregory to see Taylor in reference to the sale of the land, and obtained from him a verbal contract for the sale of his timber, and that subsequently Taylor denied the agreement and withdrew the land from sale by them, but that his contract with the defendants was not limited to the sale of the Taylor tract; that thereafter Shackelton & Wallace purchased a large tract of timber land in Nottoway county, known as the Jones tract, and as soon as they purchased it the plaintiff applied to them to be allowed to sell the timber, but that Shackleton & Wallace told him that the timber had been listed with Gallion & Gregory; that upon receiving this information he stated to them, "That is all right, I am in on that with them. I have a contract with Gallion & Gregory;" that subsequently Gallion & Gregory made sale of the Jones timber at the price of $30,000, for which they received a commission of $1,500; that on the day this transaction was closed he demanded of Gallion & Gregory $500 for his share of the commissions, which was refused.

Gallion & Gregory, on the other hand, testify that the defendant came to them and asked Mr. Gregory if they knew anything about the Taylor tract of timber land in Amelia county, to which he replied that he did, but that it could not be bought; that the plaintiff then said, "It can be bought and Mr. Taylor is very anxious to sell it," and if one of them would go down to see Taylor and make a contract with him to handle the timber, the plaintiff would give them names of parties who might buy it; that he had a man in West Virginia who would be down to look it over within

the next few days and he would turn him over to them; that he was anxious to get this timber sold in order that he might get a contract to saw lumber near his home; that they then told the plaintiff if they got a contract with Taylor to sell his timber and succeeded in selling it to one of the men whose names the plaintiff furnished, they would give him one-third of the commissions; that this was the only agreement they ever had with the plaintiff and that the agreement embraced only the Taylor tract of timber land, and in no way affected or applied to any other sale; that the morning after this contract was made Gregory took Winfree in his car to see Mr. Taylor, and they had a verbal contract with Taylor for the sale of his timber, but· he afterwards repudiated it, and the land was withdrawn; that the plaintiff wanted them to continue their efforts to sell the Taylor timber and look to a jury to give them their commissions, but they declined to do so, saying that they did not do business in that way; that ten days or two weeks afterwards they listed the Jones tract in Nottoway county, which had been purchased by Shackleton & Wallace, and they subsequently sold the timber thereon to Baptist & Goode, who had previously contemplated buying the Taylor timber; that after the sale of the timber on the Jones tract the plaintiff came to them and said that he thought they ought to give him something for giving them the names; that the plaintiff did not at that time appear to claim anything under the agreement, and when asked by Gregory, "How much do you think we owe you?" the plaintiff replied, "I will leave that entirely to you."

There was a judgment for the plaintiff in the court below for $500, and to that judgment this writ of error was awarded. ·

[1] Two errors were assigned, but the main and chief error related to the admission of testimony with reference to the conversation which took place between the plaintiff

and Shackleton & Wallace at the time the plaintiff applied to them to be allowed to sell the timber which they had recently purchased. The plaintiff, Shackleton, and Wallace, each testified that when the plaintiff applied to Shackleton & Wallace to be allowed to sell the timber which they had recently purchased, and when Shackleton & Wallace stated to the plaintiff that the timber had been listed with Gallion & Gregory, the plaintiff stated, "That is all right, I am in on that with them. I have a contract with Gallion & Gregory." Each of these three witnesses testified to this conversation, and a separate bill of exception was taken to the admission of the testimony of each, and it was stated in each bill of exception that the testimony "was given upon the direct examination" of the witness. At that time there had been no impeachment, in any way, of the testimony of the plaintiff, nor had either of the defendants testified. But it appears from the testimony subsequently given that about the time that the sale of the Jones timber was being closed up, the plaintiff wrote to Baptist, a member of the firm of Baptist & Goode, who had bought the Jones timber, requesting them not to close the deal for the Jones timber until the plaintiff could see them; the substance of the letter being that the plaintiff did not want them to buy the Jones timber until they had seen the Taylor timber. This letter was introduced by the defendants as tending to show that the plaintiff was not then claiming the same interest in the commission for the sale of the Jones timber as for the Taylor timber. The plaintiff admitted writing the letter, but did not give nor attempt to give any explanation of its purpose.

The evidence is certified in narrative form, and is plainly not altogether in the language of the witnesses. It does not appear from the transcript that the plaintiff was recalled after the defendants had introduced their testimony, but such may have been the fact, and all of his testimony cer-

tified in one continuous narrative. However this may be, the order of the introduction of evidence is left largely to the discretion of the trial court, whose ruling thereon will not be disturbed unless plainly prejudicial to the rights and interests of the party complaining thereof. *Tate* v. *Bank,* 96 Va. 768, 32 S. E. 476.

[2-5]    As a rule, the prior consistent statements of a witness are not receivable to corroborate his testimony, as the repetition of a story does not render it any more trustworthy. There are few exceptions to this rule. In 1 Green. on Ev., sec. 469-b (16th ed. by Wigmore) it is said: "Where the impeachment consists in a charge of bias, or interest, or corruption, there is value in showing a prior consistent statement before the time when the supposed bias, or interest, or corruption could have existed; for it thus appears that his present testimony cannot be attributed to bias or the like." But no such facts exist in the instant case. The contract between the parties was made before the conversation introduced in evidence was had, and the interest of the plaintiff was the same at the date of the conversation as at the time of the trial. So that the conversation was not admissible under this exception to the rule. It was said in the argument that, after the introduction of the letter aforesaid, "the objectionable evidence was proper to show the good intention and good faith of Winfree," but such good intention and good faith cannot be shown in that way. The statement was simply self-serving. It was Winfree's statement that he had a contract with Gallion & Gregory which was sought to be used to prove the existence of such a contract. It is said by Wigmore, in his edition of Greenleaf, *ubi supra,* "It is sometimes said that this sort of evidence is admissible after impeachment of any sort, in particular after any impeachment by cross-examination, but there is no reason for such a loose rule." The author, in a note to the above sec-

tion, referring to the "loose rule," says: "Apart from North Carolina, it is probably not law anywhere today."

It must also be borne in mind that the statement which was received in evidence was that of a party to the contract as well as a witness on his own behalf. The language of Buchanan, J., in *Repass* v. *Richmond*, 99 Va. 508, 39 S. E. 160, is very pertinent to the case at bar. After stating the general rule as to the exclusion of prior consistent statements of a witness and the exception thereto, he also states the rule where the witness is also a party to the suit and to the contract as follows: "The witness, whose former statement was permitted to go to the jury, was not merely a witness, but was also a party to the suit and to the bond, whose validity was the matter to be determined by the jury. His relation to the bond was the same when his prior statement was made that it was when he testified in the cause. This being so, it is clear that under the rule as stated by Mr. Greenleaf and the other authorities cited, evidence of his former statement was inadmissible. Not only was the evidence not within the exception of the general rule, but it is obnoxious to another equally well settled rule of law, that a party cannot give in evidence his own declarations, and upon this ground also such evidence is held to be inadmissible. *L. & P. S. Turnpike Co.* v. *Heil,* 118 Ind. 135, 20 N. E. 703."

The same general rule is stated and enforced by Kelly, J., in *Hilleary* v. *Hubbell,* 119 Va. 123, 89 S. E. 111. The case at bar is not within the exception referred to in the opinion last mentioned.

[6] The admission of evidence of the conversation aforesaid was plainly prejudicial to the defendants, and for that reason the judgment of the circuit court must be reversed. We express no opinion upon the weight of the testimony. With the objectionable testimony stricken out,

the case is not left in such a condition that final judgment can be entered in this court under the provisions of section 6365 of the Code. It will be remanded, therefore, to the circuit court for a new trial to be had in conformity with the views expressed in this opinion.

*Reversed.*