Tuesday        5th

October, 1999.


Derek Wayne Gurganus,                                        Appellant,

 against        Record No. 2766-97-1
                Circuit Court Nos. 97-38-00 and 97-38-01

Commonwealth of Virginia,                                    Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
        Elder, Bray, Annunziata, Bumgardner, Lemons and Frank


        Scott L. Reichle (Donald J. Reichle;
        Reichle & Reichle, P.C., on brief),
        for appellant.

        Donald E. Jeffrey, III, Assistant
        Attorney General (Mark L. Earley,
        Attorney General, on brief), for
        appellee.


        Upon a rehearing en banc, the stay of this Court's

April 20, 1999 mandate is lifted, and the judgment of the trial

court is affirmed in accordance with the majority opinion of a

panel of this Court in Gurganus v. Commonwealth, 29 Va. App.

494, 513 S.E.2d 427 (1999).

        Judges Benton and Elder dissent for those reasons

expressed in the dissenting opinion of the panel.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

                                        Tuesday        25th

        May, 1999.

Derek Wayne Gurganus,                                    Appellant,

  against       Record No. 2766-97-1
               Circuit Court Nos. 97-38 and 97-38-01

Commonwealth of Virginia,                               Appellee.

                    Upon a Rehearing En Banc

   Before Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
       Elder, Bray, Annunziata, Bumgardner, Lemons and Frank


        On April 29, 1999 came the appellant, by counsel, and

filed a petition praying that the Court set aside the judgment

rendered herein on April 20, 1999, and grant a rehearing en banc

thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on April 20, 1999

is stayed pending the decision of the Court en banc, and the

appeal is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule

5A:35. It is further ordered that the appellant shall file with

the clerk of this Court ten additional copies of the appendix

previously filed in this case.

                        A Copy,
                            Teste:
                                    Cynthia L. McCoy, Clerk
                            By:
                                 Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Overton
Argued at Norfolk, Virginia


DEREK WAYNE GURGANUS
                                          OPINION BY
v.    Record No. 2766-97-1         JUDGE RICHARD S. BRAY
                                        APRIL 20, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                     Westbrook J. Parker, Judge

            Scott L. Reichle (Donald J. Reichle;
            Reichle & Reichle, P.C., on brief), for
            appellant.

            Donald E. Jeffrey, III, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Derek Wayne Gurganus (defendant) was convicted in a jury

trial for statutory burglary and grand larceny, violations of

Code §§ 18.2-91 and -95, respectively.  He complains on appeal

that the trial court erroneously admitted into evidence a prior

consistent statement given to police by a Commonwealth witness.

Finding no error, we affirm the convictions.

     Under familiar principles of appellate review, we examine

the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358

S.E.2d 415, 418 (1987).

—

On the morning of September 9, 1996, James Elkins, an employee of Hallmark Communications (Hallmark), discovered evidence of forced entry into the business location in Isle of Wight County and "stuff missing." Elkins notified the local sheriff, and Lieutenant Tom Gibbons was assigned to investigate. Gibbons proceeded to the scene, inspected the building, and observed that "the entire place had been ransacked," with damage to both rear entry and interior doors. A subsequent inventory confirmed that numerous items had been stolen, including a "console . . . T.V." and nine pagers.

Shortly after Gibbons' arrival, Sheriff's Deputy Willard "showed up" and provided Gibbons with particulars relative to a suspicious vehicle he had observed in the area at "about 4:30 [that] morning." Gibbons ascertained that the vehicle was registered to a Virginia Beach address and immediately contacted that city's police, requesting assistance in locating the car. Within hours, Virginia Beach police stopped the vehicle, recovered the stolen TV and pagers, and arrested the driver, Eric Landers, and his passenger, Kevin (Greg) Baucom, for "possession of stolen articles."

Gibbons learned immediately of the arrests, proceeded directly to Virginia Beach, arriving within an hour, questioned Landers, and obtained the following signed statement:

I, Eric Joseph Landers, left my house on the night of September 8th with my two friends [defendant and Baucom]. We went and picked up my car from Newport News. Then we went to [defendant's] house and dropped his car off. We started driving to one of our friend's house just to say hey and see what he was doing. But on the way there we had seen the store and they (Derek [defendant] and Greg [Baucom]) were like, hey, let's hit this place. So after we visited our friend for a little while we headed back towards where we came from. They had told me to let them out and go pick them up in twenty minutes. I drove around and they . . . told me to drive down the dirt road so they could put the things in the car. So like an idiot, I did. I was sitting in the car telling them to leave because what they were doing was stupid. I never set one foot inside that building. That is the honest truth. All I did was get out of the car and walk where they could hear me and tell them I was leaving so they had better come on.

I am so sorry for even driving around. Even though I didn't take anything I still should have not ever drove around for them. I was scared and I didn't know what to do. I'm not used to being scared so I just went along and drove around. I've never been more scared than I am right now. One of them has said (pretty much said) if someone rats them out they're dead, so I don't know what to do, but I am telling the truth and I will cooperate with you one hundred percent. I just want to go to college and make something of myself. I just hope that I haven't already ruined that chance.

Landers' trial testimony, as a Commonwealth witness, was substantially consistent with his earlier statement to Gibbons, and the Commonwealth attempted to introduce it into evidence. Defendant, however, objected, arguing that the Commonwealth was

attempting to improperly "bolster" Landers' testimony.  In sustaining the objection, the trial court concluded that the evidence was inadmissible "until [defense counsel] attacks [Landers'] credibility."

Defendant concedes on brief that counsel subsequently "cross-examined Mr. Landers in an attempt to impeach his testimony and challenge his credibility."  In response to such questioning, Landers acknowledged that the Virginia Beach charge had been "dropped" following his arrest in Isle of Wight on September 12, 1996 for the instant offenses and that trial in Isle of Wight had been delayed until he testified in the subject prosecution.  Landers admitted "hope" that "something good" would result from his testimony but steadfastly denied that anyone promised "anything" in return.  Defendant did not explore Landers' motives in making the earlier statement to Gibbons.

The Commonwealth recalled Gibbons on rebuttal and offered Landers' statement "to refute the notion that's been put forward by the defense that he's fabricated [a story] . . . to benefit himself."  Defense counsel objected, again arguing that the statement would improperly bolster Landers' credibility.  The trial court, however, concluded that the statement was then admissible as "one of the exceptions to the hearsay rule" against prior consistent statements and permitted Gibbons to relate it to the jury.  The disputed convictions followed and

defendant, on appeal, challenges the admissibility of the prior statement.

## II.

"As a general rule, a prior consistent statement of a witness is inadmissible hearsay."  Faison v. Hudson, 243 Va. 397, 404, 417 S.E.2d 305, 309 (1992) (citations omitted). However, the Supreme Court of Virginia has approved "a few narrowly circumscribed exceptions," id.,

> when the opposing party:  (1) suggests that the declarant had a motive to falsify his testimony and the consistent statement was made prior to the existence of that motive, (2) alleges that the declarant, due to his relationship to the matter or to an involved party, had a design to misrepresent his testimony and the prior consistent statement was made before the existence of that relationship, (3) alleges that the declarant's testimony is a fabrication of recent date and the prior consistent statement was made at a time when its ultimate effect could not have been foreseen, or (4) impeaches the declarant with a prior inconsistent statement.

Mitchell v. Commonwealth, 25 Va. App. 81, 84-85, 486 S.E.2d 551, 552-53 (1997) (citing Faison, 243 Va. at 404-05, 417 S.E.2d at 309-10); see also 1 Charles E. Friend, The Law of Evidence in Virginia § 4-12 (4th ed. 1993 & Cum. Supp. 1998).  Manifestly, such exceptions are intended to permit a party to "repel . . . an imputation" that a witness testified untruthfully by "show[ing] that the witness made a similar statement at a time

when the supposed motive [to fabricate] did not exist." Repass v. Richmond, 99 Va. 508, 515, 39 S.E. 160, 163 (1901).

Thus, once defendant tainted Landers' trial testimony with evidence suggesting that self-interests had compromised his veracity, Landers' prior consistent statement to Gibbons was admissible to repair his credibility, provided the statement was made before Landers had reason or design to falsify. In seeking to escape the rule in this instance, defendant maintains that "bias, interest or corruption" inhered in Landers' post-arrest statement to Gibbons. He reasons that Landers then had a "motive to lie" and "shift the blame from himself to another in an attempt to get favorable treatment," although the record does not disclose evidence of promise, expectation or other incentive to fabricate at that time.

In support of his contention that Landers' post-arrest custodial status, without more, infected his statement with self-interest, defendant relies upon Smith v. Commonwealth, 239 Va. 243, 387 S.E.2d 871 (1990). In Smith, the accused had brutally murdered a police officer, following earlier threats to "shoot the first [police officer] that arrive[d]." Id. at 249, 387 S.E.2d at 874. Subsequent to arrest, Smith explained to police that he fired his weapon in self-defense after an assailant first shot him in the foot, a clearly exculpatory statement reflective of a "motive to lie," together with

"sufficient time to fabricate a story." Id. at 261, 387 S.E.2d at 880. In concluding that Smith's statement was inadmissible as a prior consistent statement, the court looked beyond Smith's mere status as an arrestee and considered the content of the statement, together with attendant circumstances, to find that it was fraught with self-serving motive, corrosive of truth. See id.; see also United States v. Henderson, 717 F.2d 135 (4th Cir. 1983), cert. denied, 465 U.S. 1009 (1984) (arrest alone does not establish a motive to fabricate).

In contrast, Landers' prior statement was clearly inculpatory, a confession not simply to possession of stolen goods, the Virginia Beach offense for which he was then in custody, but, additionally, a ready admission to participation in the then uncharged burglary and larceny in Isle of Wight. Unlike Smith, Landers further implicated rather than exonerated himself. Thus, the content of Landers' statement, an appropriate consideration to our analysis, countered any attribution of taint arising solely from the attendant circumstances.

Moreover, the record offers no support to defendant's claim that Landers' statement was otherwise prompted by unspoken coercion, anticipation of leniency or favor, or improper motive. No evidence suggests a scheme to mislead through the statement, prior knowledge of its consequences or the existence of

inconsistent statements.  During cross-examination of Landers, defendant probed only his reasons for <u>testifying at trial</u>, with no inquiry into considerations that induced Landers to speak with Gibbons months previously.  He now relies on a silent record to discredit Landers' statement.

It is well established that "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  <u>Blain v. Commonwealth</u>, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted).  "Thus, we should reverse only upon 'clear evidence that [the decision] was not judicially sound' and not simply to substitute our 'discretion for that rendered below.'"  <u>Jefferson v. Commonwealth</u>, 27 Va. App. 477, 488, 500 S.E.2d 219, 225 (1998) (alteration in original).

Under the instant circumstances, we find no abuse of discretion in the admission of Landers' prior consistent statement into evidence and, accordingly, affirm the convictions.

<u>Affirmed.</u>

Benton, J., dissenting.

By well established "general rule, a prior consistent statement of a witness is inadmissible hearsay."  Faison v. Hudson, 243 Va. 397, 404, 417 S.E.2d 305, 309 (1992).  See also Howard v. Commonwealth, 81 Va. 488, 490 (1886).  As the Supreme Court noted in Faison, "[t]o allow such a statement to corroborate and buttress a witness's testimony would be an unsafe practice, one which not only would be subject to all the objections that exist against the admission of hearsay in general but also would tend to foster fraud and the fabrication of testimony."  243 Va. at 404, 417 S.E.2d at 309.  The rule is subject only to "a few narrowly circumscribed exceptions."  Id. See also Gallion v. Winfree, 129 Va. 122, 127, 105 S.E. 539, 540 (1921).

Pertinent to this appeal, the Supreme Court has described one of the narrow exceptions by "stat[ing] that, when a witness is impeached by 'a charge of bias, or interest, or corruption,' a prior consistent statement made by the witness is admissible if it was made 'before the time when the supposed bias, or interest, or corruption could have existed.'"  Faison, 243 Va. at 404, 417 S.E.2d at 309 (quoting Gallion, 129 Va. at 127, 105 S.E. at 540) (emphasis added).  I disagree with the majority's conclusion that Eric Landers' statement qualified under this exception.  The evidence clearly proved that Landers' statement

was not made <u>before</u> the time when his bias, interest, and corruption could have existed.

Landers made his statement after the police arrested him. When Landers was stopped and arrested by the police, Landers was driving a vehicle containing some of the stolen property. Indeed, he possessed the only parcels of stolen property that have been recovered -- a large television and eight pagers. After Landers was arrested in the City of Virginia Beach for possession of the stolen property in his vehicle, he was arrested in Isle of Wight County for breaking and entering.

Landers was interrogated after his first arrest and made the statements at issue. When Landers was arrested for possessing the stolen property and charged with a felony, those events became the occasion that spawned the motive to exonerate himself. At that time, he was not free from any desire, motive, or impulse he may have had to mitigate the very apparent appearance of his own culpability. As the Court noted in <u>Gallion</u>, "[t]he [contact] between the parties [in the criminal event] was made before the [statement] introduced in evidence was had, and the interest of [Landers] was the same at the date of the [statement] as at the time of the trial. So that the [statement] was not admissible under this exception to the rule." 129 Va. at 127, 105 S.E. at 540. Simply stated, the evidence does not establish that when Landers made the

confession he was free of motivation to mitigate the obvious appearance of his culpability by spreading the blame and overstating Derek Wayne Gurganus' involvement.  Indeed, Landers' statement implicates Gurganus as the primary criminal actor and mitigates Landers' participation through a self-serving description of Landers as an unsuspecting companion who was "telling them to leave because what they were doing was stupid." In a further attempt to exonerate himself and promote his interest, Landers' statement contains an offer to "cooperate with [the police] one hundred percent" and expresses a desire "to go to college and make something of [him]self . . . hop[ing] that [he has not] already ruined that chance."

At the time Landers made these revelations, he had been arrested for possession of the stolen goods.  "Hence, he had a clear motive to lie about who [committed the burglary], and he had sufficient time [between his arrest and later interrogation] to fabricate a story."  Smith v. Commonwealth, 239 Va. 243, 261, 389 S.E.2d 871, 880 (1990).  Furthermore, the evidence proved that after Landers made his statement, the felony charge was dismissed in the City of Virginia Beach.

In affirming the trial judge's admission of the prior consistent statement, the majority creates a new evidentiary standard.  The majority looks to the "inculpatory" nature of Landers' statement and concludes that it outweighs the "taint."

In this respect, the majority confuses the prior consistent statement exception to the hearsay rule with the declaration against penal interest exception.  Furthermore, the majority's analysis fails to address the "narrowly circumscribed exceptions" to the "general rule" barring admission of the prior consistent hearsay statement.  <u>Faison</u>, 243 Va. at 404, 417 S.E.2d at 309.  I can find no case decision holding that a prior consistent statement may be admitted under an exception to the hearsay rule if the statement is proved to be inculpatory.

For these reasons, I would hold that the trial judge erred, reverse the convictions, and remand for retrial.